MISSOURI, K. & T. RY. CO. OF TEXAS v. EDWARDS. (No. 1448.)

(Court of Civil Appeals of Texas. Texarkana. April 30, 1915. Rehearing Denied May 6, 1915.)

1. EXCHANGE OF PROPERTY ⟨⟩3—CONSIDERATION—COMPROMISE—GOOD FAITH.

Where one who was sued in forcible entry and detainer by a railroad company for the possession of certain land in settlement of that suit leased the property from the company, but testified that she signed the lease under a misapprehension of its contents, and on the advice of an attorney that it could not be used to take her land away from her, the lease did not conclusively show that she made no claim in good faith to the property, so that a promise by the company to give her other land in exchange for that property was without consideration.

[Ed. Note.—For other cases, see Exchange of Property, Cent. Dig. §§ 3, 7; Dec. Dig. ⟨⟩3.]

2. CONTRACTS ⟨⟩68—CONSIDERATION — COMPROMISE.

A compromise of a claim made in good faith and with reasonable grounds is a good consideration for a promise, though the claim in fact could not be enforced in court.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 328–330; Dec. Dig. ⟨⟩68.]

3. EXCHANGE OF PROPERTY ⟨⟩8—ACTIONS—PETITION—CHARGE OF DECEIT.

A petition, which alleged that a railroad company presented to the owner of a lot a contract for the exchange of other property for that lot, as evidence of an oral agreement for the exchange previously made by the parties, that plaintiff executed the contract believing that the land described therein was the same as that which had been pointed out to her as the property she was to receive, but in fact it was other land of less value, sufficiently charged deceit on the part of the railroad company.

[Ed. Note.—For other cases, see Exchange of Property, Cent. Dig. §§ 14–18; Dec. Dig. ⟨⟩8.]

Appeal from District Court, Grayson County; W. M. Peck, Judge.

Action by Mary J. Edwards against the Missouri, Kansas & Texas Railway Company of Texas. Judgment for the plaintiff, and defendant appeals. Affirmed.

Head, Dillard, Smith, Maxey, & Head, of Sherman, for appellant. E. W. Neagle and J. H. Lawson, both of Sherman, for appellee.

WILLSON, C. J. In constructing that part of its line of railway described in the record as the "Dallas cut-off," it became necessary for appellant to use $58/100$ of an acre of land which it claimed to own and to have leased to appellee, situated in the city of Denison. Appellee resided upon the land, denied that she held it as appellant's lessee, and claimed, instead, that she owned it. Negotiations between the parties finally (on June 29, 1912) resulted in an arrangement whereby appellee in writing agreed to, and afterwards did, remove from the land and relinquish and release to appellant all claim she had in and to same, in consideration of appellant's undertaking to move a house off of certain other land in said city, move another house on same, and then convey said other land to appellee by a quitclaim deed. Appellee's contention was that appellant pointed out to her as the land it proposed to convey to her lot 6 in block 27 of Stephens' addition to the city of Denison, but instead conveyed to her parts of lots 5 and 4 lying east of and adjoining said lot 6. Her suit against appellant was to cancel the contract between herself and appellant and the deed she made to appellant to the $58/100$ of an acre, or, in the alternative, for damages for deceit practiced upon her. Appellee alleged that at the times she executed the contract and deed in compliance with her undertaking thereunder she did not know that the land appellant pointed out to her as the land it proposed to convey to her was lot 6, but believed that the "property described in said contract," to wit, part of lots 4 and 5, was the same property appellant had pointed out to and agreed to convey to her, "and, so believing, thereafter executed a deed," conveying the $58/100$ of an acre to appellant. She further alleged that after she executed said contract and deed and received from appellant its deed to parts of said lots 4 and 5, "she learned for the first time that defendant had not deeded to her the lot which it pointed out to her, which she says was lot No. 6 in block No. 27 of said Stephens' addition, but instead thereof had deeded to her a three-cornered piece of land, a part of lots 4 and 5, block 27, of Stephens' addition aforesaid, which land so deeded to her is of practically no value." She then alleged that appellant had "wrongfully and fraudulently represented to her" that it would deed to her the land she afterwards learned was lot 6, and "fraudulently induced" her to execute to it a deed conveying the $58/100$ of an acre, and "wrongfully and fraudulently obtained possession thereof by the means herein alleged. That as soon as plaintiff was advised that the lot pointed out to her by defendant was not deeded to her, but that another and different lot was deeded to her, she at once repudiated the contract and deed alleged herein above, and now repudiates same, and tenders back to defendant said contract and said deed." The appeal is

---

⟨⟩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

from a judgment in appellee's favor for the sum of $250 as damages.

The trial court determined as a matter of law that appellee was not entitled to have instruments she had executed canceled, and submitted to the jury only a question as to her right to recover damages. He told them that "a false representation of a material fact which constitutes an inducement to a contract, on which the plaintiff has a right to rely, and which she believed to be true and by which she was misled, would entitle her to relief," and instructed them to find for appellee if they believed: (1) She owned the $58/100$ of an acre at the time she agreed to remove therefrom and to relinquish and release same to appellant; (2) that she was induced to so agree and thereafterwards to remove from the land and convey her interest in same to appellant on the faith of its undertaking to convey her lot 6; (3) that appellant refused to comply with its undertaking, but instead conveyed her parts of lots 4 and 5; and (4) that within a reasonable time thereafterwards she "offered to disaffirm said exchange of land and to cancel said conveyances."

[1] The assignments question the correctness of the action of the court in instructing the jury as stated and in refusing to instruct them as requested by appellant. The contention is that the testimony did not warrant the instructions given, and demanded the giving of those refused. The testimony was conflicting, but that relied upon by appellee was sufficient to support findings: (1) That appellant and appellee both claimed to own the $58/100$ of an acre; (2) that appellee was in possession of same, occupying and using it as her home; (3) that to induce her to remove therefrom and to convey said land to it appellant orally offered to move a certain house onto other land it pointed out to appellee and to convey same to her; (4) that the other land so pointed out was lot 6; (5) that appellee orally accepted the offer; (6) that an instrument in writing, purporting to state the agreement between the parties, was prepared and executed by appellant and presented by it to appellee for execution; (7) that in this instrument the land appellant bound itself to convey to appellee was described as parts of lots 4 and 5 and by metes and bounds; (8) that appellee signed the instrument and delivered it to appellant and moved off of the $58/100$ of an acre, believing the land described in the instrument as stated to be the land appellant had pointed out and orally offered to convey to her, and that she afterwards released and relinquished her claim to said $58/100$ of an acre to appellant; and (9) that appellant failed to move said house onto lot 6, the land it had pointed out to appellee, and convey same to her, but instead moved the house onto parts of lots 4 and 5 and conveyed said parts to her. The testimony authorizing such findings, we think

the objections made by appellant to the instructions given on the ground stated should be overruled, unless, as appellant contends was true, it conclusively appeared that there was no consideration for its undertaking to move the house and convey lot 6 to appellee. Guinn v. Ames, 36 Tex. Civ. App. 613, 83 S. W. 232. The contention is based on proof made by appellant that on April 14, 1910, appellee and her mother executed and delivered to it an instrument in writing whereby they leased the $58/100$ of an acre from it for a period of one year commencing on that day, "and subject to renewal and continuation" as provided in the instrument as follows:

"It is further understood and agreed by and between the parties hereto that this lease shall be deemed by consent of parties renewed and continued in force from year to year, unless one of the parties hereto shall immediately preceding the end of any year give to the other thirty days' notice in writing of its or their intention to terminate the lease, and upon such notice being so given by either party the lease shall terminate at the close of such year, at which time said first party [appellant] shall be entitled to take full and exclusive possession of the premises hereby let. This provision, however, is not intended to impair or interfere with the reserved right of the railway company to terminate this lease at any time whenever in its judgment the possession of the grounds or any portion thereof hereby let are necessary in the operation of its railway upon giving the notice herein provided."

[2] And further proof made by appellant that appellee refused to pay the yearly rental stipulated for, and refused, after notice given to her as provided in the instrument, to remove from and give it possession of the premises. It seems from the record that appellee's refusal, as stated, was based on a claim she made that at the time the lease was executed she had been occupying the land as her home for about 12 years, that she owned it, and that she executed the lease in settlement of a forcible entry and detainer suit brought by appellant against her for the land, under a misapprehension as to its contents and legal effect and on assurance given her by a lawyer that it "didn't amount to anything" and "could not be used to take the land away from her." We do not think it should be said that it conclusively appeared that appellee's claim that she owned the $58/100$ of an acre was without any foundation and was not made by her in good faith, and therefore that her removal from the land and conveyance of it to appellant was not a sufficient consideration to support appellant's undertaking to move the house to and convey her lot 6. The law controlling such agreements is stated in 6 Ruling Case Law, § 71, to be as follows:

"Analogous to the relinquishment of a right is the compromise of a disputed claim whereby the claim is extinguished. Regardless of whether suit is pending in regard to the claim, the settlement thereof is a sufficient consideration for a promise because of the detriment to the party consenting to the compromise arising

from the alteration of his position. There is authority to the effect that a compromise cannot be a sufficient consideration for a promise where there has been no dispute between the parties, or where the disputed claim is legally groundless. If this statement is to be understood as requiring the actual existence of an enforceable liability, it would seem to be opposed to the weight of authority, according to which the claim need merely be a doubtful one. If it is, the actual rights of the parties, whatever they may be, do not affect the question. The fact that the promisor is mistaken in regard to his liability is immaterial. If there is a doubtful claim the courts will not investigate into the relative merits or demerits of the claims of the parties. It is not a defense that the claim could not have been maintained if suit or action had been brought upon it, or that the parties were mistaken as to the law; for, if it is, it would follow that contracts by the parties settling their own disputes would at last be made to stand or fall according to the opinion of the court as to how the law would have determined it. If the compromise of the parties is made to depend on the question whether the parties have so settled the dispute as the law would have done, then it may be truly said that a compromise is an unavailing, idle act which questions even the power of the parties to bind themselves. But a claim which is utterly without foundation and known to be so is not a good consideration for a promise. The claimant must honestly suppose or believe that he has a cause of action. Accordingly, where the promise is extorted by threats to sue on a claim which the party knows is wholly unfounded and which he is making for the purpose of extorting money, the contract is utterly void. Some courts require that in addition to good faith, the claimant shall have reasonable grounds for asserting his claim. Under this view, the doubtful right compromised, to be a good consideration for a promise, must, upon reasonable grounds, be honestly entertained by the person proposing to assert it. It seems that even under this view, all that is necessary is that there should be a claim concerning which the parties may bona fide and upon reasonable grounds disagree. The compromise of such a claim in good faith is a good consideration to pay money in settlement thereof, and when an action is brought upon such promise, it is no defense to say that the claim was not in fact a valid one, and that the parties were mistaken either as to the law or the facts."

[3] The contention made that it did not appear from the allegations in appellee's petition that she was induced to execute the contract whereby she undertook to remove from the ⁵⁸/₁₀₀ of an acre and convey same to appellant as the result of fraud practiced upon her is, we think, not supported by the record. As we understand them, the allegations in effect were that appellant, when it presented the writing it had prepared as evidence of the agreement to appellee for execution, thereby represented that the land described therein as the land it was to convey to her was the land it had pointed out and orally agreed to convey to her, and that she executed the instrument so presented to her believing that the parts of lots 4 and 5 therein described as the land appellant bound itself to convey to her was the land it had pointed out to her, and in ignorance of the fact that the land so described therein was other and different and less valuable land than that appellant had pointed out. These al-

legations, we think, sufficiently charged deceit on the part of appellant.

There is no error in the judgment, and it is affirmed.