Audrey H. SCHMALTZ, Appellant,

v.

John E. WALDER, Progress Drilling Company, Highlands Insurance Company and General Adjustment Bureau, Appellees.

No. 1273.

Court of Civil Appeals of Texas, Corpus Christi.

April 27, 1978.

Rehearing Denied May 18, 1978.

John Barrow, Nicolas & Morris, Corpus Christi, for appellant.

Tom Hermansen, Dyer, Redford, Burnett, Wray & Woolsey, William A. Abernethy, Meredith, Donnell & Edmonds, Corpus Christi, for appellees.

## OPINION

BISSETT, Justice.

This is an appeal from a summary judgment in a suit to recover damages for personal injuries and to set aside a release. Mrs. Audrey H. Schmaltz sued John E. Walder and Progress Drilling Company to recover damages for personal injuries allegedly sustained by her when a truck which was then being driven by John E. Walder, an employee of Progress Drilling Company, struck a trailer that was being towed by an automobile in which she was riding as a passenger. Mrs. Schmaltz also sued Highlands Insurance Company and General Adjustment Bureau to set aside a release which she and Harold B. Schmaltz, her husband, executed subsequent to the accident which released each of the defendants from all liability which resulted from the collision. All defendants filed motions for summary judgment. Plaintiff contested the motions. The trial court granted the motions and rendered judgment that Mrs. Schmaltz take nothing by her suit. Mrs. Schmaltz has appealed.

The collision in question, wherein Mrs. Schmaltz sustained an injury to her knee and damage to property, occurred in Alvin, Texas on March 1, 1975. Thereafter, on March 14, 1975, in consideration of the sum of $2,000.00 paid, she and her husband signed a complete release of all liability with respect to all defendants. Mrs. Schmaltz filed suit on July 28, 1976, wherein she sought damages and asked that the release be set aside. She contends that the release should be set aside because: 1) she did not possess sufficient mental capacity to contract on March 14, 1975, when she signed the release and accepted the $2,000.00; 2) the release was procured by defendants by fraud which was perpetuated on her; and 3) the release was signed as a result of a mutual mistake.

All of the above grounds asserted for setting the release aside are affirmative defenses in the nature of confession and avoidance. *Oram v. General American Oil Company of Texas,* 513 S.W.2d 533 (Tex. Sup.1974); *Nichols v. Smith,* 507 S.W.2d 518 (Tex.Sup.1974); *"Moore" Burger, Inc. v. Phillips Petroleum Company,* 492 S.W.2d 934 (Tex.Sup.1973). Since the release, which is a contract, was admittedly signed by Mr. and Mrs. Schmaltz, and $2,000.00 was paid to and deposited by them in full settlement of all claims, past, present and future, arising out of the collision, the motions for summary judgment were properly granted unless Mrs. Schmaltz, the non-movant, came forward with summary judgment proof sufficient to raise an issue of fact with respect to at least one of the grounds asserted by her for avoiding the release. *Zale Corporation v. Rosenbaum,* 520 S.W.2d 889 (Tex.Sup.1975); *Gulf Colorado & Santa Fe Railway v. McBride,* 159 Tex. 442, 322 S.W.2d 492 (1959).

The defendants' summary judgment proof consisted of an affidavit of Mr. William E. Henry, Branch Claims Manager of Highlands Insurance Company, which had attached thereto as exhibits duly authenticated copies of the aforesaid release and of the draft. Such, without more, was sufficient to grant defendants' motions for summary judgment. Therefore, we must examine the summary judgment evidence of Mrs. Schmaltz to determine whether such evidence establishes as a matter of law that there is no genuine issue of fact as to at least one of the grounds asserted for avoiding the effects of the release.

## IN GENERAL

■ A settlement agreement and release, valid on its face, until set aside, is a complete bar to any later action based on matters included in the settlement agreement and covered by the release. *Hart v. Traders & General Ins. Co.*, 144 Tex. 146, 189 S.W.2d 493 (1945).

"Evidence", as that term is used in this opinion, means "summary judgment evidence" as presented by the affidavits and depositions on file in the trial court. The testimony and statements of the parties, hereinafter noted, are found in the affidavits and depositions.

Following the accident, Mrs. Schmaltz was treated by a doctor in Alvin for her injury and was released. A few days later, she returned to Corpus Christi, and was contacted by Mr. Mike Winner, an adjuster with General Adjustment Bureau. On their first visit, Winner and Mrs. Schmaltz discussed the matter of damages. Winner came up with a figure of $2,000.00 as a firm settlement offer. During the discussion with Winner, Mrs. Schmaltz suggested that $5,000.00 would be more in line with the damages she sustained. Winner, however, rejected the suggestion and told her firmly, but politely, that she was "making claims that weren't possibly covered". Mrs. Schmaltz then told Winner that she would have to go over this with her husband. The $2,000.00 settlement offer was calculated as follows:

Value of antiques in Trailer . . . . . . . . . $1,500.00
Medical expenses in Alvin . . . . . . . . . . 35.00
Replacement of trailer . . . . . . . . . . . . . 450.00
                                          $1,985.00

Mrs. Schmaltz acknowledged that her out-of-pocket expenses, as reflected in the above calculations, did not total $2,000.00. Further, she stated in her deposition that the $2,000.00 was:

"To cover the contents of the trailer, replacement of the trailer, and it would take care of the doctor bills in Alvin and a few other little—like the rental (use of the booth that she had lost by missing the antique show in Houston) and things like that that he (Winner) allowed and he thought that was ample."

The only other "little things" mentioned by Mrs. Schmaltz in her deposition was a doctor bill for her visit to Dr. Nast, her personal physician in Corpus Christi, on March 19, 1975. There is no summary judgment proof relating to the amount charged by Dr. Nast for this visit.

On the evening of Winner's call on Mrs. Schmaltz, the settlement offer was discussed by and between Mr. and Mrs. Schmaltz. Later, she discussed the settlement proposal with Mrs. Louise Bowman, her sister, and with her son. Shortly thereafter, Mrs. Schmaltz told Winner that she and Mr. Schmaltz had decided to accept the $2,000.00 in settlement of her claims for damages. The next day, she and her husband went to Winner's office, where Winner handed them the release and asked that they both read it, which they did. They then signed the release and were given a sight draft for $2,000.00. They deposited the money to their account.

Mrs. Schmaltz saw Dr. Nast on March 19, 1975. She again contacted Winner and told him that it was her understanding that Highlands Insurance Company would take care of her medical bill for her visit on March 19, 1975, and that since her subsequent visits to Dr. Nast stemmed from the visit on March 19, 1975, defendants were required to pay all such medical bills. Winner replied that she had signed the release, and Highlands Insurance Company could not take care of any of the doctor bills. Whereupon, Mrs. Schmaltz filed this suit.

## THE ASSERTED MENTAL INCAPACITY

■ The general rule is that a contract, such as the release here involved, executed by a person who does not have the mental capacity to contract is voidable; and if such person signed a contract without sufficient mental capacity to understand the nature and consequences thereof, the contract is not binding and may be set aside. *Nohra v. Evans,* 509 S.W.2d 648 (Tex.Civ.App.—Austin 1974, no writ); 50

Tex.Jur.2d, Release, § 4. The validity of a release must be determined as of the date it was executed, and in light of the circumstances surrounding the parties at that time. *Atkins v. Womble,* 300 S.W.2d 688 (Tex.Civ.App.—Dallas 1957, writ ref'd n.r.e.).

Mrs. Schmaltz, with respect to her mental capacity at the time in question, stated in her deposition that after the offer of $2,000.00 had been under discussion with her husband, she told him:

".   .   .   I was at the point of breaking. I just couldn't stand thinking of what had happened and I told him, let's sign off".

She further stated that she was under "nervous tension and I was just all upset over everything". Mrs. Schmaltz also consulted with her sister, Mrs. Louise Bowman, and said to her:

".   .   .   I can't take any more of it .   .   .   the nervous anxiety, the tension that I was under.   .   .   .   this is the tension of not having it resolved, .   .   ."

The tension and anxiety, according to Mrs. Schmaltz's statements in her deposition, was caused by the fact that she "wanted to get it over with" in order to get money to "buy some more antiques", and to continue her business of buying and selling antiques.

Mrs. Bowman, by affidavit, stated that she visited Mrs. Schmaltz on several occasions between March 1 and March 15, 1975. She said: "my sister suffered from emotional and mental distress   .   .   .   during this period she was unable to act rationally".

Mr. Schmaltz, in his deposition, stated that during period of negotiations, when he talked about settlement with his wife, she would get nervous and, at times, would start crying. He said that her nervous tension was a continuous problem that began after the accident and continued through the time she signed the release, and further stated that his wife told him that "they weren't going to pay any more".

■ Nervous tension and anxiety, without more, does not amount to mental inca-

pacity which precludes such person from understanding the nature and consequences of his (her) acts. Although Mrs. Schmaltz testified that she was under nervous tension during the negotiations, she possessed sufficient mental capacity to rationally negotiate the settlement with Winner, and to discuss the terms of settlement with her husband, her son and her sister. She explained that the tension she was under was caused by not having the matter resolved so she could continue in business. By settling the matter, such tension should have been removed.

■ Mrs. Schmaltz had the opportunity to read the release document. She did so. There is a complete absence of summary judgment evidence which showed that Mrs. Schmaltz did not understand what she was doing. A fact issue with respect to a lack of mental capacity to enter into the agreement to settle and compromise the claim for damages is not raised by summary judgment evidence.

### THE ASSERTED FRAUD

■ A release, like any other contract, may be set aside if it is induced by fraud. *Page v. Baldon,* 437 S.W.2d 625 (Tex.Civ.App.—Dallas, 1969, writ ref'd n.r.e.); *Brady v. Johnson,* 512 S.W.2d 359 (Tex.Civ.App.—Austin 1974, no writ). However, in this case, it was incumbent upon Mrs. Schmaltz to raise a fact issue by summary judgment evidence with respect to each of the six (6) elements of fraud in inducement of the execution of the release. Those elements were set out by Chief Justice Greenhill in *Oilwell Division, United States Steel Corporation v. Fryer,* 493 S.W.2d 487, 491 (Tex. Sup.1973), and it is not necessary that they be repeated in this opinion. Included in those elements, are the elements of misrepresentation of a material fact, and reliance by the party who claims injury upon such misrepresentation.

Dr. Nast, in his examination of Mrs. Schmaltz on March 19, 1975, ran an EKG, which showed "normal." Mrs. Schmaltz made an appointment on that day "to come back when the series of blood tests would

be taken and the back pain he didn't provide for". She saw Dr. Nast on March 25, 1975, when he put her on a "muscle relaxer", prescribed a sedative, and had her back x-rayed. The next day she telephoned Winner. Concerning that conversation, she said in her deposition:

"A Yes, sir. I called him after I went to see Dr. Nast because he had told me that they would take care of the medical bills on the—when I went to the doctor on the 19th.

Q Now, when did he tell you that?

A In that conversation at the house."

\* \* \* \* \* \*

"A And I said I understood you to say that you would take care of the doctor bill on the 19th and I said, now, this has stemmed from the 19th and he said I am sorry, you signed the release and we can't take care of any of the doctor bills.

Q All right. What did you say?

A I said, well, I am sorry to hear that but I am almost sure you told me that, Mike.

Q Uh-huh. Anything else take place in that conversation?

A Not to my knowledge, sir, that I can remember.

Q Did you ever talk to Mr. Winter (sic) any other time?

A No."

\* \* \* \* \* \*

■ Mrs. Schmaltz did not produce any summary judgment evidence as to the amount of Dr. Nast's medical bill. She received $15.00 more than the itemized total of her property damages and doctor bills incurred in Alvin, Texas. Defendants argue that the extra $15.00, "in all probability, was to cover the medical bill of March 19, 1975, there being an absence of any evidence to show that the bill was greater than $15.00." There is no evidence that a false representation was made, nor is there any evidence that any statement by Winner was made recklessly and without any knowledge of its truth as a positive assertion. Moreover, assuming arguendo, that

the statement was false, there is no summary judgment proof that Mrs. Schmaltz relied upon it to the extent that it was a controlling factor in inducing her to sign the release, and without which she would not have signed the same. See *Neuhaus v. Kain*, 557 S.W.2d 125 (Tex.Civ.App.—Corpus Christi 1977, writ ref'd n.r.e.); *First State Bank of Bellaire v. Olde Colony House, Inc.*, 414 S.W.2d 221 (Tex.Civ.App.—Waco 1967, writ ref'd n.r.e.). There is no evidence that the release was procured by fraud.

## THE ASSERTED MUTUAL MISTAKE

■ A "mutual mistake" is one common to both parties to a contract, each laboring under the same misconception. *Hanover Insurance Company v. Hoch*, 469 S.W.2d 717 (Tex.Civ.App.—Corpus Christi 1971, writ ref'd n.r.e.); *Commercial Standard Insurance Co. v. White*, 423 S.W.2d 427 (Tex. Civ.App.—Amarillo 1967, writ ref'd n.r.e.); *Newell v. Mosley*, 469 S.W.2d 481 (Tex.Civ. App.—Tyler 1971, writ ref'd n.r.e.).

■ The effect of a written release cannot be avoided on the grounds that the releasor was ignorant of, or mistaken as to the contents of the release, or failed to read the same before signing it. *Harvey v. Elder*, 191 S.W.2d 686 (Tex.Civ.App.—San Antonio 1945, writ ref'd).

■ Here, there is no evidence that Winner was laboring under any misconception. He offered $2,000.00 for a full and complete release of liability. His offer was accepted. The evidence did not raise a fact issue relating to the asserted mutual mistake.

## DISPOSITION OF THE APPEAL

After considering the record most favorably to Mrs. Schmaltz, we hold, as a matter of law, that there is no evidence which raised a fact issue with respect to any of the grounds urged for the setting-aside of the release. It is undisputed that Mrs. Schmaltz signed the release, which was valid on its face. By the terms of the release, all of the defendants were released from all

**86**

damages, past, present and future, resulting from the occurrence on March 1, 1975. Summary judgment was properly rendered for the defendants.

The judgment of the trial court is AFFIRMED.

NYE, C. J., not participating.