RGS, CARDOX RECOVERY, INC. and
Spearman-Tertiary, Ltd., Appellants,

v.

DORCHESTER ENHANCED
RECOVERY CO., et al.,
Appellees.

No. 13–85–066–CV.

Court of Appeals of Texas,
Corpus Christi.

Oct. 31, 1985.

Rehearing Denied Nov. 27, 1985.

Frank Finn, Rachelle Hoffman Glazer, Michael V. Powell, Dallas, for appellees.

Before NYE, C.J., and DORSEY and BENAVIDES, JJ.

## OPINION

DORSEY, Justice.

This is an appeal from a summary judgment in an action for interpretation or reformation of the terms of a joint venture agreement. We affirm the judgment of the trial court.

The disputed language within paragraph 9.2 of the Joint Venture Agreement, entitled Management Committee, provides in part: "No Management Committee meeting may be held or action taken unless voting members representing aggregate venture percentages of at least seventy-five percent (75%) are present and voting, and all decisions except as otherwise herein provided shall be by majority vote...." Appellee urged, and the trial court agreed, that such language is unambiguous and means that at least seventy-five percent of the venture are present *and voting* on each issue in order to reach a decision. Appellant argues that this provision is a requirement for a quorum in order to transact business; that after the quorum of 75% has been initially reached, the committee can transact business based on a majority of the represented shares.

■ We first determine whether the contractual provision is ambiguous. If, after applying the rules of contract interpretation, the disputed contractual provision remains reasonably susceptible of more than one meaning, the provision is ambiguous. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). If the contract is ambiguous, extrinsic evidence may be admitted to show the circumstances surrounding the drafting of the disputed provision in order to glean the intentions of the parties. *R & P Enterprises v. LaGuarta, Gavrel & Kirk, Inc.*, 596 S.W.2d 517 (Tex.1980).

John W. Bickel, II, Mark D. Summers, William A. Brewer, III, Dallas, for appellants.

Transpetco I Joint Venture was formed on April 11, 1979, for the purpose of recovering oil and gas by means of carbon dioxide injection, and the joint venture agreement was executed. Under that agreement, field operations are to be conducted by an operator, who is selected or removed by the joint venture's Management Committee. The composition and voting procedures for the Management Committee are set forth in paragraph 9.2 of the joint venture agreement:

9.2 *Management Committee.* The Management Committee shall consist of one representative of each of the Joint Venturers, together with representatives of CAI and RGS as hereinafter provided, which representatives shall sometimes be referred to herein as members. Each of the Joint Venturers may remove and replace its representative on the Management Committee at any time. *No Management Committee meeting may be held or action taken unless voting members representing aggregate Venture Percentages of at least seventy-five percent (75%) are present and voting, and all decisions except as otherwise herein provided shall be by majority vote of those voting members present,* with one vote being allocated to each representative with the vote being weighted or equal to their respective Venture Percentages in the Joint Venture.... (Emphasis added.)

On February 1, 1984, at a meeting of the Management Committee, a vote was called on the issue of whether appellant RGS should be installed as the operator instead of appellee Dorchester Enhanced Recovery Company. Dorchester Gas Producing Company, Halliburton Company, and Texas Energy Services, Inc., although voting on previous issues at the meeting, stated that with respect to changing operators each was "present, but not voting." RGS, Cominco and Spearman, representing 54.0625% of the ownership interests in the joint venture, voted affirmatively on the motion to remove Dorchester as operator and to install RGS as operator. Appellees urge, and the trial court agreed, that because less

than 75% of the interests were both present and voting on the issue, it failed to carry. Appellant argues that the clause means a quorum requirement which, once met, would allow the committee to take action by a majority vote.

Appellants filed a declaratory judgment action to enforce the vote and to declare that appellees' conduct was ineffective to block the change in operator, or in the alternative, for reformation of the disputed paragraph.

Appellees responded and filed their motions for summary judgment contending that Section 9.2 supported their position as a matter of law.

■ The propriety of the summary judgment is being attacked. As this is a case involving the interpretation of a contract, if the contract is found to be unambiguous, a summary judgment is proper. If the contractual provision in dispute is found to be ambiguous, the summary judgment proof will be examined to see if a material fact issue exists in order to determine whether the summary judgment was proper.

■ We must then examine the entire contract to attempt to harmonize the other relevant provisions with the one in dispute. If, after so doing, the provision remains reasonably susceptible to more than one interpretation, we must reach the conclusion that the provision is ambiguous. *Coker,* 650 S.W.2d at 393.

■ We agree with the rule that requires this Court to attempt to harmonize the other relevant provisions with the one in dispute if the provision is ambiguous, but here, there is only one provision dealing with two different matters; the second dependent on the first and not ambiguous. We find that both sections are in the same sentence and when read together are not ambiguous.

■ The first phrase delineates clearly that *"no meeting may be held* or *action taken* unless voting members representing Aggregate Venture Percentages of at least

seventy-five (75%) *are present and voting* ...." (Emphasis ours.) This provision controls when a meeting may be held and *when action may be taken.* The second section "... and *all decisions* except otherwise herein provided *shall be by majority vote of those voting members present."* (Emphasis ours.) This provides the percentage of vote necessary to carry a decision or decide what action may be taken. That is: one section declares when action may be taken and the other declares what vote is required to take such action. The vote must be by majority to carry a decision but such vote or decision cannot be had or held unless 75% are present and voting. The first phrase limits the second, but it does not contradict it or make it susceptible to two interpretations. The parties had a right to contract and place whatever limitations upon themselves as they might agree to in their contract. That the provision might be burdensome or awkward is not a problem for the courts. The appellants agreed to the provision and appellees have the right to rely on compliance with the provision as agreed to by the parties. Appellants' second and third points of error are overruled.

Appellants' first point of error alleges that the trial court erred in granting Defendants' Motion for Partial Summary Judgment on Count II of their petition, which sought reformation of the Joint Venture Agreement to represent the original agreement of the parties.

To support their petition for reformation, appellants allege mutual mistake, unilateral mistake coupled with knowledge of the unilateral mistake by appellees, or unilateral mistake and fraud.

■ A party seeking reformation of an instrument based on mutual mistake must show that the provision complained of was included or omitted due to the mutual mistake of the parties and must show the true agreement of the parties to the instrument. *National Resort Communities, Inc. v. Cain,* 526 S.W.2d 510 (Tex.1975); *Capitol Rod & Gun Club v. Lower Colorado River Authority,* 622 S.W.2d 887 (Tex.

App.—Austin 1981, writ ref'd n.r.e.). A mutual mistake is "one common to both or all parties, wherein each labors under the same misconception respecting a material fact, the terms of the agreement, or the provision of a written instrument designed to embody such an agreement." *Capitol Rod & Gun Club,* 622 S.W.2d at 892; *Schmaltz v. Walder,* 566 S.W.2d 81 (Tex. Civ.App.—Corpus Christi 1978, writ ref'd n.r.e.); *Eggert v. American Standard Life Insurance Company,* 404 S.W.2d 99, 105 (Tex.Civ.App.—Corpus Christi 1966, no writ). In order to justify reformation of the instrument, the evidence of mistake must be clear, exact and satisfactory. *Alkas v. United Savings Association of Texas, Inc.,* 672 S.W.2d 852, 858 (Tex.App.— Corpus Christi 1984, writ ref'd n.r.e.). The appellant, in order to defeat the summary judgment, must show that there is some evidence that the writing differs from the true agreement, and that these erroneous provisions were inserted by mutual mistake of the parties.

■ Appellants' summary judgment evidence contains affidavits of interested parties which state that Section 9.2 established a threshold quorum requirement and that decisions would be binding if supported by a majority vote. Appellees' summary judgment affidavits state that Section 9.2 established an issue-by-issue quorum requirement. There is no suggestion in the summary judgment evidence that both the appellants and appellees were laboring under the same misconception as to a material fact, term, or provision of the written instrument designed to embody their agreement. *See Capitol Rod & Gun Club,* 622 S.W.2d at 892; *Schmaltz,* 566 S.W.2d 81; *Eggert,* 404 S.W.2d at 105. Nor is there any suggestion that appellees knew at the time of the execution of the agreement that appellants' understanding of Section 9.2 was not the same as was set out in the agreement. After carefully reviewing the voluminous summary judgment evidence, we find no evidence that raises the issue that the alleged mistake was common to both appellant and appellee.

Unilateral mistake alone is not a ground for reformation. *Allen v. Berrey*, 645 S.W.2d 550 (Tex.App.—San Antonio 1982, writ ref'd n.r.e.); *Capitol Rod & Gun Club*, 622 S.W.2d at 892. Unilateral mistake accompanied by fraud or misrepresentation by the other party will warrant reformation. *Ace Drug Marts, Inc. v. Sterling*, 502 S.W.2d 935, 939 (Tex.Civ.App.—Corpus Christi 1973, writ ref'd n.r.e.); *Peterson v. Barron*, 401 S.W.2d 680, 687 (Tex.Civ.App.—Dallas 1966, no writ.)

There is nothing in the record to suggest that appellees made a material, false representation upon which appellants relied to their detriment. *See, Stone v. Lawyers Title Insurance Corp.*, 554 S.W.2d 183, 185 (Tex.1977).

As no issue of fact was raised by appellants' summary judgment proof regarding their claimed bases for reformation, the trial court's granting of Defendant's Motion for Summary Judgment was proper. Appellants' first point of error is overruled.

We AFFIRM the judgment of the trial court.