**Joaquin de MONET, Ricardo de Monet, Charles Schonfeld, and Helga Schonfeld, Appellants,**

v.

**PERA, A Colorado General Partner, as nominee for Public Employees Retirement Association of Colorado, Appellee.**

No. 05–92–02711–CV.

Court of Appeals of Texas, Dallas.

March 4, 1994.

Rehearing Denied May 9, 1994.

Frederick W. Addison, III, Elizabeth E. Mack, Dallas, Harry M. Reasoner, Houston, for appellant.

Cynthia Hollingsworth, Stacy R. Obenhaus, Dallas, for appellee.

Before BAKER, MALONEY and ROSENBERG, JJ.

## OPINION

ROSENBERG, Justice.

This is a summary judgment case. Joaquin de Monet, Ricardo de Monet, Charles Schonfeld, and Helga Schonfeld (Sellers) appeal the trial court's decision to grant PERA rescission of a $30 million purchase agreement on the grounds of mutual mistake. Sellers bring seventeen points of error, contending that the trial court erred in granting summary judgment to Public Employees Retirement Association of the State of Colorado (PERA) and denying their cross-motion for summary judgment.

We conclude that a material fact issue exists regarding mutual mistake. We sustain Sellers' point of error one and overrule point of error two. Because of our disposition of point of error one, we do not address Sellers' points of error three, four, five, six, seven, eleven, thirteen, and seventeen. Sellers' remaining points of error complain that the trial court erred in denying their cross-motion for summary judgment. Because the trial court expressly denied Sellers' summary judgment solely on its erroneous finding of mutual mistake as a matter of law and did not consider the merits of Sellers' grounds for summary judgment, we will not review these issues for the first time on appeal. We reverse the trial court's order granting summary judgment to PERA and denying summary judgment to Sellers. We remand the entire cause to the trial court for further proceedings.

## BACKGROUND FACTS

In 1986, PERA purchased property at 1200 Main Street in downtown Dallas, which included a twenty-seven floor office building, from Sellers. A federal agency, the General Services Administration (GSA), was the building's primary tenant, occupying more than seventy percent of the building. In 1984, Sellers discovered that the building contained asbestos, which GSA required to be removed as a prerequisite for renewing its

lease. Sellers hired a company called PICO, Inc., to remove the asbestos-contaminated material. PICO contracted to bring the building into compliance with the GSA lease restrictions on asbestos. GSA renewed its lease.

At the time of the sale, GSA remained the building's primary tenant, and PICO continued the asbestos-abatement program. During negotiations for purchase of the building, the attorneys for Sellers and PERA discussed the necessity of satisfactory removal of asbestos in the building. During the course of the abatement work, Matrix Engineering periodically tested the air quality in the building and reported its readings to GSA, which determined that the air readings were within acceptable levels. PICO represented to Sellers that it had removed the asbestos in an amount consistent with the GSA lease restrictions on all but four floors. Neither Sellers, GSA, nor PERA supervised or inspected PICO's asbestos-abatement work to determine whether PICO had properly removed the fireproofing material.

In the purchase agreement, Sellers represented to PERA that, in reliance on the air clearance tests performed by Matrix, the asbestos removal was complete and consistent with GSA guidelines, except for four floors. At the closing, the parties acknowledged that PICO had not performed its abatement work on four floors of the building. In a letter-of-credit agreement, Sellers agreed to complete the abatement work necessary on these four floors to ensure compliance with federal guidelines. PERA held back 1.3 million dollars of the purchase price until the abatement work was completed on the remaining four floors.

The parties also executed an assignment and assumption of lease agreements, which included an assignment of the GSA lease. In the assignment, Sellers stated that to the best of their actual knowledge, there were no defaults under the leases and that there was nothing which, with the passage of time or the giving of notice, could become a default under the lease, except as they had previously disclosed in writing.

In Spring 1987, PICO completed its work on the remaining floors, and GSA occupied these floors based on the results of the air-monitoring tests. PERA released the letters of credit.

In 1989, PERA discovered unabated asbestos in the building. Several inspections, more extensive than air quality tests, revealed that none of the building's floors were in compliance with the GSA lease restrictions. In 1990, PERA filed suit, contending that Sellers negligently misrepresented the status of the asbestos abatement and breached their warranties. PERA sued for damages based on fraud, misrepresentation, negligence, and breach of contract. PERA also sued for rescission of the purchase agreement on the grounds of mutual mistake. Both parties moved for summary judgment.

The trial court voided the contract and letters of credit, ordered rescission of the $30 million purchase agreement, and sought to restore the parties to their original positions. The trial court required PERA to tender title to the building and required Sellers to return the purchase price with interest minus an offset for income received on the property. The trial court determined that the remaining claims and counterclaims between the parties were inconsistent with the finding of mutual mistake and entered a take-nothing judgment on those claims and counterclaims.

## SUMMARY JUDGMENT

A trial court may render summary judgment only if the pleadings, depositions, admissions, and affidavits on file show that no genuine issue exists regarding any material fact and that the movant is entitled to judgment as a matter of law. Tex.R.Civ.P. 166a(c); *Black v. Victoria Lloyds Ins. Co.*, 797 S.W.2d 20, 23 (Tex.1990). Summary judgment is designed to eliminate unmerited claims or untenable defenses; it is not intended to deprive litigants of their right to a full hearing on fact issues. *Compton v. Calabria*, 811 S.W.2d 945, 949 (Tex.App.—Dallas 1991, no writ) (citing *Gulbenkian v. Penn*, 151 Tex. 412, 416, 252 S.W.2d 929, 931 (1952)).

Under rule 166a, both plaintiff and defendant may simultaneously move for summary judgment. Tex.R.Civ.P. 166a. A movant

must expressly present, in the summary judgment motion, the specific grounds for summary judgment. *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341 (Tex.1993). Each party must carry its own burden, and neither can prevail due to the other's failure to meet its burden. *See Cove Inv., Inc. v. Manges*, 602 S.W.2d 512, 514 (Tex.1980).

On appeal, this Court considers all evidence accompanying both motions. *Edinburg Consol. Indep. Sch. Dist. v. St. Paul Ins. Co.*, 783 S.W.2d 610, 612 (Tex.App.—Corpus Christi 1989, no writ). In reviewing the summary judgment evidence, we apply the following standards:

1. The movant has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law;

2. In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant is taken as true; and

3. Every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in its favor.

*Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985).

When a trial court's order granting summary judgment for one movant and denying summary judgment for the other does not specify the grounds upon which it rests, this Court may affirm the trial court's judgment if any of the grounds raised in the prevailing movant's motion are meritorious. *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex.1989); *Rogers v. Ricane Enters. Inc.*, 772 S.W.2d 76, 79 (Tex.1989). This Court may also reverse the trial court's judgment and render judgment for the other movant based on any meritorious grounds raised in its motion. *See id.; Jones v. Strauss*, 745 S.W.2d 898, 900 (Tex.1988).

However, when a trial court's order explicitly specifies the ground relied on for the summary judgment ruling, the summary judgment can be affirmed only if the theory specified in the trial court's order is meritorious. If the specified ground is not meritorious, the appellate court must remand the

cause to allow the trial court to rule on the remaining grounds. *State Farm Fire & Casualty Co. v. S.S.*, 858 S.W.2d 374, 380 (Tex.1993) (plurality opinion) (citing *State v. Flag–Redfern Oil Co.*, 852 S.W.2d 480, 484 n. 6 (Tex.1993)).

Here, the summary judgment order is specific. The judgment provides, "[PERA] and Sellers, at the time they entered into the Purchase Agreement were mutually mistaken concerning a material fact, namely, the existence of asbestos-containing fireproofing material in the building." The judgment further recites, "All parties believed that such asbestos had been removed or properly abated on all floors ... and the parties would not have entered into the transaction and executed the agreements if they had known the truth.... Accordingly, the parties are entitled to be restored to their original positions and to restitution of all consideration paid...."

At the summary judgment proceeding, PERA had the burden to establish that there exists no genuine issue of material fact, thereby entitling it to judgment as a matter of law. *See City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex.1979). All doubts as to the existence of a genuine issue of material fact are resolved against PERA, and we view the evidence in the light most favorable to Sellers. *See Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.*, 391 S.W.2d 41, 47 (Tex.1965).

## MUTUAL MISTAKE

In point of error one, Sellers contend that the trial court erred in finding mutual mistake as a matter of law and granting PERA rescission of the purchase agreement.

An agreement may be avoided where the parties contracted under a misconception or mistake of a material fact. *Williams v. Glash*, 789 S.W.2d 261, 264 (Tex. 1990); *see, e.g., ALG Enters. v. Huffman*, 660 S.W.2d 603, 606 (Tex.App.—Corpus Christi 1983), *aff'd as reformed per curiam*, 672 S.W.2d 230 (Tex.1984). Where a mutual mistake exists, the parties are entitled to rescind their contract and be restored to positions held before entering the contract.

*Leonard v. Eskew,* 731 S.W.2d 124, 131 (Tex. App.—Austin 1987, writ ref'd n.r.e.). To avoid the contract, however, the parties must have acted under the same misunderstanding of the same material fact. *Lacy v. Ticor Title Ins. Co.,* 794 S.W.2d 781, 784 (Tex. App.—Dallas 1990), *writ denied per curiam,* 803 S.W.2d 265 (Tex.1991).

■ The party seeking to avoid the contract has the burden of proof to show a mutual mistake.[1] The party seeking rescission on the grounds of mutual mistake must show (1) a mistake of fact, (2) held mutually by the parties, (3) which materially affects the agreed-upon exchange. RESTATEMENT (SECOND) OF CONTRACTS § 152 (1981).

■ When mutual mistake is alleged, the task of the court is not to interpret the language contained in the contract, but to determine whether the contract itself is valid. *See Williams,* 789 S.W.2d at 264–65. If it can be established that a contract sets out a *bargain that was never made,* it will be invalidated. *Id.* at 265.

Sellers assert that the summary judgment evidence reflects genuine issues of material fact about each element of mutual mistake: the existence of the alleged mistake, the mutuality of the mistake as well as its materiality. Sellers further contend that PERA may not seek the equitable remedy of rescission because the mistake resulted from PERA's failure to investigate. According to Sellers, PERA conducted the due diligence it deemed sufficient, established a purchase price, and then relied on its lawyers to negotiate and draft an appropriate contract. Therefore, argue Sellers, PERA may not seek relief outside the contract because it is unhappy with its bargain.

PERA contends that the summary judgment evidence establishes a mutual mistake of fact as a matter of law. PERA reasons that neither it nor Seller knew of the existence of unabated asbestos; therefore, neither party negotiated for the purchase and sale of a building which contained unacceptable levels of cancer-causing asbestos. PERA further asserts that neither it nor Sellers

would have entered the contract and completed the bargain if they had known otherwise. Therefore, the mutual mistake was material to the agreed-upon exchange. PERA contends that in order for Sellers to show a dispute regarding the materiality of the mistaken fact, they must prove either that (1) PERA did not care whether the amount of asbestos in the building violated the GSA lease or (2) the GSA lease had no effect on the value of the building. PERA concludes that Sellers did not submit any summary judgment proof that raises a material issue of fact about any element of PERA's claim of mutual mistake.

■ Notwithstanding Sellers' contentions, the summary judgment evidence establishes that the building contained unacceptable levels of asbestos at the time of sale and upon the release of the letters of credit. Further, it is undisputed that neither party had actual knowledge of unabated asbestos. Therefore, PERA has established, as a matter of law, a mistake of fact held mutually by the parties. We must now determine whether PERA has met its burden to establish the mutual mistake's material effect on the agreed-upon exchange as a matter of law.

■ First, a material effect is one that involves the subject matter of the contract and the substance thereof. *Durham v. Uvalde Rock Asphalt Co.,* 599 S.W.2d 866, 870 (Tex.Civ.App.—San Antonio 1980, no writ) (citing *Brown–McKee, Inc. v. Western Beef, Inc.,* 538 S.W.2d 840, 845 (Tex.Civ. App.—Amarillo 1976, writ ref'd n.r.e.)). A mutual mistake is not material if it relates merely to a collateral matter. It must be "essential to an understanding of the consequences of the agreement." *Plains Cotton Co-op Ass'n v. Wolf,* 553 S.W.2d 800, 805 (Tex.Civ.App.—Amarillo 1977, writ ref'd n.r.e.) (quoting *Simpson v. Simpson,* 387 S.W.2d 717, 719 (Tex.Civ.App.—Eastland 1965, no writ)).

■ Second, when determining the materiality of such a mistake, this Court considers the surrounding circumstances of the exchange. We consider the contract itself, the

1. The parol evidence rule does not bar extrinsic proof of mutual mistake. *Santos v. Mid–Conti-* *nent Refrigerator Co.,* 471 S.W.2d 568, 569 (Tex. 1971) (per curiam).

knowledge of the parties at the time of the contract, the extent of negotiations and discussions regarding the alleged mutual mistake, and the amount of consideration paid. *See Williams,* 789 S.W.2d at 264. We do not give "controlling weight" to the language contained in the contract. *See Johnson v. Texas Ass'n of Sch. Bds.,* 852 S.W.2d 648, 649 (Tex.App.—Eastland 1993, no writ).

This Court also considers what relief is available to the party seeking rescission on the grounds of mutual mistake. Section 152 of the Restatement states:

> In determining whether the mistake has a material effect on the agreed exchange of performances, account is taken of any relief by way of reformation, restitution, or *otherwise.*

RESTATEMENT (SECOND) OF CONTRACTS § 152(2) (1981) (emphasis added). The knowledge of the parties about a prior asbestos problem, the extent of the parties' negotiations about the mistake, and the warranties in the agreements affect the materiality of the mistaken belief of proper asbestos abatement. *See Williams,* 789 S.W.2d at 265; RESTATEMENT (SECOND) OF CONTRACTS § 152 (1981).

The summary judgment evidence indicates that the parties knew of (1) a prior asbestos problem, (2) a completed asbestos-abatement project, (3) ongoing asbestos removal with respect to four floors, and (4) air quality tests indicating successful abatement. PERA and Sellers extensively negotiated about asbestos and specifically drafted agreements that speak to the issue of asbestos abatement. The purchase agreement includes representations regarding the parties' understanding and bargaining power, the parties' respective rights and responsibilities, as well as specific warranties concerning asbestos abatement. The parties also entered a letter-of-credit agreement to deal with the known asbestos at the time of the sale and its removal.

The parties, however, dispute the substance of their negotiations. According to PERA, its intent was to buy an "asbestos-free" building and Sellers' intent was to sell an "asbestos-free" building. Sellers state that they purposely did not take a position on the success of PICO's abatement work and refused to advise PERA about the amount of asbestos in the building at the time of the sale. According to Sellers, they had no personal knowledge of the level of asbestos in the building at the closing or upon release of the letters of credit.

The parties dispute the meaning of their representations and the significance of various contractual provisions. According to PERA, it sought to protect itself by the warranties in the contract. It did not perform its own tests, conduct an independent investigation, or supervise PICO's work "because [it was] protected by the contract." PERA sought to ensure that Sellers would agree to remove the asbestos in the remaining four floors and would warrant and represent that the entire building complied with the GSA lease restrictions regarding asbestos on all floors.

According to Sellers, they were very particular in giving only a limited warranty, not based on personal knowledge, without special inquiry, and in reliance on the air clearance tests. Sellers presented evidence that the parties established the Matrix air clearance tests as an appropriate indicator of proper asbestos abatement. According to Sellers, PERA acknowledged in the purchase agreement that it was fully capable of performing a due diligence inquiry and was "able to evaluate the risks and benefits of its purchase of the [building]." According to PERA, Sellers acknowledged in the purchase agreement that "the acquisition by [PERA] of the [building] will have been made in material reliance on [PERA's] representations and warranties."

Sellers presented evidence that the agreements established specific, objective criteria to determine when they completed their obligations to remove the asbestos. Sellers maintained that they completed their obligations to PERA because GSA accepted the asbestos abatement, occupied the abated floors, and remained tenants in the building. According to PERA, the parties did not agree that GSA's occupation of the building or air clearance tests indicating successful abatement would release Sellers from their warranty of asbestos abatement within feder-

al guidelines. PERA presented evidence that Sellers warranted an "asbestos-free" building.

■ This conflicting summary judgment evidence about the parties' knowledge, the substance of the negotiations, and the significance of certain representations creates fact issues as to whether the mistake was material and essential to the exchange of performances. *See Williams,* 789 S.W.2d at 265. Because the existence of any other relief must be considered when determining whether a mistake has a material effect on the transaction, the disputed meanings of warranties about proper asbestos abatement and conflicting provisions as to the parties' respective rights necessarily create fact issues that preclude summary judgment. *See* RESTATEMENT (SECOND) OF CONTRACTS § 152(2) (1981).

An incorrect belief about the success of the abatement work does not translate into the automatic conclusion that the mistake had a material effect on the exchange of performances. *See* RESTATEMENT (SECOND) OF CONTRACTS § 152 cmt. a (1981). Parties seldom negotiate and contract with perfect knowledge of existing facts. The mere fact that both parties are mistaken with respect to an existing fact does not, of itself, afford a reason for avoidance of the contract. Relief is appropriate only in situations where a mistake of both parties has such a material effect on the agreed exchange of performances as to upset the very basis of the contract. *Id.*

Here, the basis of the purchase agreement is a "renovated" building. PERA and Sellers did not simply exchange $30 million dollars for an office building. PERA and Sellers extensively negotiated and bargained for representations and warranties from one another that accompany the sale of a "renovated" building known to contain some level of asbestos. A trier of fact may decide that PERA knew of the risk of unabated asbestos and not only considered this risk but attempted to allocate it to Sellers, such that the mutual mistake did not materially affect the agreed-upon exchange. On the other hand, a trier of fact may determine that notwithstanding the parties' negotiations

about asbestos removal and the specific contract provisions, the mistaken assumption was so fundamental to the parties' agreement that the mutual mistake materially altered the transaction. Because a factfinder could move in either of these directions, genuine fact issues exist which preclude the trial court from summarily granting PERA the right to rescission on the grounds of mutual mistake.

Considering the knowledge of the parties at the time of the contract, the extent of negotiations and discussions regarding asbestos and its removal, and the representations and warranties contained in the contracts, this Court cannot say that PERA is entitled to rescission as a matter of law. The trial court improperly granted summary judgment for PERA. We sustain Sellers' first point of error.

■ In point of error two, Sellers contend that the trial court erred in not finding the absence of mutual mistake as a matter of law because PERA bore the risk of the alleged mistake. Under section 154 of the Restatement, a party bears the risk of mistake when the risk is allocated to him by agreement or when he knowingly treats his limited knowledge of the facts surrounding the mistake as sufficient. *See* RESTATEMENT (SECOND) OF CONTRACTS § 154(a) & (b) (1981). PERA contends that an application of section 154 does not place the risk of the mutual mistake on PERA. *See* RESTATEMENT (SECOND) OF CONTRACTS § 154 (1981).

■ Here, the purchase agreement does not specifically allocate the risk of improper asbestos removal. Provision 10gg of the purchase agreement addresses the issue of asbestos abatement:

Seller warrants and represents to the best of its knowledge without Special Inquiry and in reliance upon air clearance tests performed by Matrix, an industrial hygienist employed by PICO, the contractor responsible for performing asbestos removal in the Improvements, that those floors of the Improvements in which asbestos removal is complete are within the acceptable levels for asbestos set forth in the applicable federal governmental guidelines.

Seller covenants that it shall complete, at [its] sole cost and expense, removal of asbestos on the remaining floors of the Improvements to levels within said federal governmental guidelines, which covenant shall survive the Closing.

The representation and warranty provided in provision 10gg and other provisions in the purchase agreement and letter-of-credit agreement do not allocate the risk of possible asbestos problems to PERA; therefore, section 154(a) does not apply. *See* RESTATEMENT (SECOND) OF CONTRACTS § 154(a) & (b) (1981).

■ Moreover, a contract is ambiguous when, after applying proper rules of interpretation, it remains uncertain about which of two meanings is the intended one. *Dallas Bank & Trust Co. v. Frigiking, Inc.*, 692 S.W.2d 163, 166 (Tex.App.—Dallas 1985, writ ref'd n.r.e.). Provision 10gg is ambiguous in that it can be read as a representation that the Matrix air clearance tests indicated asbestos abatement within federal guidelines or read as a warranty that Sellers will ensure that the building fully complies with GSA lease restrictions on asbestos.

■ Furthermore, the purchase agreement is ambiguous with respect to the significance of the warranties and representations that were made. Provision 10 begins by explaining that "Seller acknowledges that the execution of this Agreement by [PERA] has been made and the acquisition by [PERA] of the [building] will have been made in *material reliance* by [PERA] on such representations and warranties" (emphasis added). However, provision 10 ends by stating: "In no event shall Seller be deemed in breach of this Agreement if any warranty or representation of Seller is untrue or covenant of Seller is incapable of being performed for reasons beyond the reasonable control of Seller." The purchase agreement is ambiguous as to the intended meaning of certain representations and warranties and ambiguous about the respective rights of the parties. *See Coker v. Coker*, 650 S.W.2d 391, 393 (Tex.1983). A trial court cannot grant summary judgment based upon an ambiguous writing. *RGS, Cardox Recovery, Inc. v. Dorchester Enhanced Recovery Co.*, 700 S.W.2d 635, 638 (Tex.App.—Corpus Christi 1985, writ ref'd n.r.e.).

■ With respect to subsection (b), there is no summary judgment evidence that PERA was aware, at the time of sale, that it had limited knowledge with respect to the presence of asbestos in unacceptable levels but treated that limited knowledge as sufficient. *See* RESTATEMENT (SECOND) OF CONTRACTS § 154(b) (1981). Because summary judgment for Sellers on the basis of an absence of mutual mistake is improper, we overrule point of error two.

Due to our disposition of point of error one, we do not address Sellers' points of error three, four, five, six, seven, eleven, thirteen, and seventeen. *See* TEX.R.APP.P. 90(a).

## SELLERS' CROSS–MOTION

In points of error eight, ten, twelve, fourteen, fifteen, and sixteen, Sellers contend that the trial court erred in not granting their cross-motion for summary judgment. In their brief, Sellers recognize that the trial court did not consider any ground raised in their motion for summary judgment, but found Sellers' claims to be inconsistent with the court's finding of mutual mistake. Sellers urge this Court to consider each ground raised in their motion[2] and render the judgment the trial court should have rendered. *See Jones v. Strauss*, 745 S.W.2d 898, 900 (Tex.1988).

However, we decline Sellers' request to consider the merits of these summary judgment grounds for the first time on appeal. We limit our review of the trial court's denial of summary judgment to the ground specified in the trial court's judgment.

■ In this instance, we perceive no difference in our role as a reviewing court of a trial court's denial of a summary judgment and our role as a reviewing court of a trial

---

**2.** Sellers moved for summary judgment on several grounds, including the absence of mutual mistake, fraud, breach of contract, inadequate no-

tice, and the affirmative defenses of accord and satisfaction, waiver, and estoppel.

court's granting of a summary judgment. When the trial court expressly grants summary judgment on a specified ground, the reviewing court is precluded from considering other unaddressed grounds raised in the motion. *S.S. v. State Farm Fire & Cas. Co.*, 808 S.W.2d 668, 672 (Tex.App.—Austin 1991), *aff'd*, 858 S.W.2d 374 (Tex.1993). Likewise, if the trial court expressly denies summary judgment on a specific ground, the appellate court need not address other grounds the trial court did not consider.

Here, the summary judgment order is not only specific in that it states the ground on which the summary judgment is granted, but also specific in that it expresses the ground on which Sellers' summary judgment is denied. The order provides, "The remaining claims and counterclaims between [PERA] and Sellers are inconsistent with the Court's finding of mutual mistake." The trial court held, "[B]y reason of this Court's determination of mutual mistake, and therefore, that the contracts between [PERA] and Seller are void *ab initio*, take-nothing judgments be and hereby rendered on all remaining claims and counterclaims between [PERA] and Sellers."

 The trial court's judgment shows that the court based its denial of Sellers' summary judgment solely on its erroneous finding of mutual mistake. The trial court did not consider the merits of Sellers' grounds for summary judgment. Issues to be reviewed by an appellate court must have been actually presented to *and* considered by the trial court. *Carlisle v. Philip Morris, Inc.*, 805 S.W.2d 498, 518 (Tex.App.—Austin 1991, writ denied). "The ends of justice are best served by affording the trial court the first opportunity for review and decision." *S.S.*, 858 S.W.2d at 382 (Phillips, C.J., concurring).

 Addressing Sellers' independent grounds not considered by the trial court usurps the trial court's authority to evaluate and rule on issues before it and denies the appellate court the benefit of the trial court's decision. *S.S.*, 858 S.W.2d at 381. Here, the administration of justice is best served by further trial court review. Because the trial court did not consider the merits of Sellers' grounds for summary judgment, we will not review these grounds for the first time on appeal. Accordingly, we overrule points of error eight, ten, twelve, fourteen, fifteen, and sixteen. Due to our disposition of point of error one, there is no longer a theory of recovery that is inconsistent with Sellers' grounds for summary judgment. Consequently, we reverse the trial court's denial of Sellers' motion for summary judgment.

Because an issue of material fact exists about mutual mistake, we reverse the trial court's summary judgment and the take-nothing judgments rendered against Sellers and PERA. We remand the entire cause to the trial court for further proceedings.