# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
December 1, 2021

Lyle W. Cayce
Clerk

No. 21-20205

Cheryl Prince-Moore,

*Plaintiff—Appellant*,

*versus*

Texas Dow Employees Credit Union,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:20-CV-1501

Before King, Costa, and Willett, *Circuit Judges*.

Per Curiam:*

Cheryl Prince-Moore sued her former employer, Texas Dow Employees Credit Union (TDECU), but the district court dismissed for failure to state a claim, finding that Prince-Moore had signed a valid contractual waiver of any claims against TDECU. We AFFIRM.

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 21-20205

I

Proceeding pro se, Prince-Moore alleged that TDECU's July 2019 termination of her employment constituted unlawful gender, race, and age discrimination, as well as a violation of the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601 *et seq.* Prince-Moore admitted in her one-page complaint that she had signed a waiver of all claims against TDECU ("Agreement") in exchange for a severance payment, but argued the Agreement was "void" because she "didn't have the mental or emotional competency to make any decision that would affect the rest of my life." She added that, at the time of signing the Agreement, she "was secretly suffering from domestic violence by a family member, living in a deplorable domestic violence shelter." TDECU moved to dismiss for failure to state a claim, arguing, *inter alia*, that Prince-Moore's allegations did not plausibly suggest a degree of mental incapacity that would render the Agreement unenforceable under Texas law.[1]

---

[1] The Agreement stated that it was to be governed by the laws of Texas. We note that, in past decisions, we have explained that federal common law "'governs all questions relating to validity of and defense to purported releases of federal statutory causes of action.'" *Ingram Corp. v. J. Ray McDermott & Co.*, 698 F.2d 1295, 1316 n.27 (5th Cir. 1983) (quoting *Locafrance U. S. Corp. v. Intermodal Sys. Leasing, Inc.*, 558 F.2d 1113, 1115 (2d Cir. 1977)); *accord Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 372 (5th Cir. 2002). Some federal decisions hold that this rule applies even when, as in this case, the release itself purports to be governed by state law. *See Petro-Ventures, Inc. v. Takessian*, 967 F.2d 1337, 1340 (9th Cir. 1992); *Locafrance*, 558 F.2d at 1116 n.3. Here, we have no occasion to resolve this question, as both parties rely only on Texas-law sources in their briefing, and the magistrate judge applied only Texas law in her report and recommendation. We thus "assume[], . . . *arguendo*" that Texas law applies, given that "we normally do not address choice of law issues *sua sponte*" unless failure to do so would result in "manifest injustice." *Otto Candies, L.L.C. v. Nippon Kaiji Kyokai Corp.*, 346 F.3d 530, 534 n.1 (5th Cir. 2003); *see also Emps. Ins. of Wausau v. Occidental Petroleum Corp.*, 978 F.2d 1422, 1430 n.8 (5th Cir. 1992). There is no manifest injustice here in declining to resolve the choice of law issue.

No. 21-20205

The magistrate judge agreed with TDECU and recommended dismissal of Prince-Moore's claim on basis of the Agreement. Prince-Moore filed a motion asking the magistrate judge to reconsider the recommendation, which the district court construed as Prince-Moore's objections to the Memorandum and Recommendation pursuant to Federal Rule of Civil Procedure 72(b). Prince-Moore's motion restated her arguments that her termination was unlawful but made no argument regarding her mental capacity to sign the Agreement. After considering the magistrate's recommendation and Prince-Moore's objections, the district judge adopted the recommendation of dismissal in a one-page order. No. 4:20-CV-1501, 2021 WL 1537490 (S.D. Tex. Mar. 19, 2021). Prince-Moore timely appealed.

II

Prince-Moore primarily argues that the district court erred in concluding that she had not alleged mental incapacity sufficient to void the Agreement. As an initial matter, we reject TDECU's argument that Prince-Moore forfeited the mental-capacity issue by failing to raise it below. Her complaint, in the very next sentence after describing signing the Agreement, explained that she "didn't have the mental or emotional competency to make any decision that would affect the rest of my life," and goes on to request that the Agreement be held "null and void." This was sufficient to preserve the capacity issue for appeal, even though Prince-Moore's complaint did not use the word "capacity." Indeed, the district court, acknowledging its duty to "interpret the *pro se* complaint liberally," *Sause v. Bauer*, 138 S. Ct. 2561, 2563 (2018) (per curiam), properly analyzed Prince-Moore's complaint as raising a mental incapacity argument.

We will therefore consider Prince-Moore's arguments regarding her capacity to contract. However, a party's failure to file a written objection to a magistrate judge's report and recommendation "creates a bar to that

party's 'attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court,' except for plain error, 'provided that the party has been served with notice that such consequences will result from a failure to object.'" *Lisson v. O'Hare*, 326 F. App'x 259, 260 (5th Cir. 2009) (quoting *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc)). Prince-Moore was so notified, but her objections to the magistrate's report nonetheless made no mention of the mental-capacity issue. We thus review the district court's dismissal for failure to state a claim for plain error, rather than the usual de novo review.

## III

To prevail under a plain-error standard, Prince-Moore must show "(1) that an error occurred; (2) that the error was . . . clear or obvious; (3) the plain error must affect substantial rights; and (4) not correcting the error would 'seriously affect the fairness, integrity or public reputation of judicial proceedings.'" *Highlands Ins. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 27 F.3d 1027, 1032 (5th Cir. 1994) (quoting *United States v. Olano*, 507 U.S. 725, 736 (1993)). The "requirement of an 'obvious' error is stringent"; it must be "so clear that 'the trial judge . . . w[as] derelict in countenancing it, even absent . . . assistance in detecting it.' It is the unusual case that will present such an error." *Id.* (quoting *United States v. Frady*, 456 U.S. 152, 163 (1982)). Prince-Moore has not shown that the district court's dismissal of her claims was so obviously wrong as to constitute plain error.

"[F]or the purposes of a motion to dismiss" under Rule 12(b)(6), a court "must take all of the factual allegations in the [plaintiff's] complaint as true." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Nevertheless, in order to survive such a motion, a plaintiff's complaint must have "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action" or "mere

conclusory statements do not suffice." *Iqbal*, 556 U.S. at 678. Such conclusions must be supported by "well-pleaded factual allegations" that "plausibly give rise to an entitlement to relief." *Id.* at 679.

The primary allegation in Prince-Moore's complaint relevant to her capacity is that she "didn't have the mental or emotional competency to make any decision that would affect the rest of my life." But this allegation is merely a conclusion; indeed, it is just the sort of "conclusory statement[]" we have held insufficient for a plaintiff to overcome on lack-of-capacity grounds a defense of contractual waiver raised in a 12(b)(6) motion. *See Melancon v. Carnival Corp.*, 835 F. App'x 721, 725, 725 n.11 (5th Cir. 2020).

The only other allegation in Prince-Moore's complaint relevant to her mental capacity is her statement that, at the time the Agreement was executed, she "was secretly suffering from domestic violence by a family member, living in a deplorable domestic violence shelter." While this experience was undoubtedly harrowing, we cannot say that the district court plainly erred in holding that this allegation did not plausibly suggest mental incapacity of the kind necessary to set aside the Agreement.[2]

---

[2] Prince-Moore's appellate brief references a note from her doctor (dated September 24, 2019) that was attached to Prince-Moore's objections to the magistrate's recommendation. Her objections did not explain what the note was intended to show. Even assuming the district court should have considered it, the note says nothing about Prince-Moore's mental capacity, save for a passing reference to "emotional[] trauma[]" caused by domestic violence. The note mainly recommends in light of Prince-Moore's "abnormal physical symptoms and signs" that she "be on intermittent FMLA 4/15/19-9/19/19 and also short term disability 5/13/19-6/14/19" so that she can "do further testing, adjust medications, and keep doctor appointments." We think, as the district court apparently did, that this note is too far afield of the question of mental capacity to bolster Prince-Moore's argument. If anything, it would seem to undercut her position slightly by conceding that she was capable of intermittent work at the time she signed the Agreement, suggesting that she would have been able to understand the nature of her actions.

Texas "law presumes every party to a legal contract to have had sufficient mental capacity to understand . . . the transaction involved, and, to overcome this legal presumption, the burden of proof rests upon the party asserting to the contrary." *Swink v. City of Dallas*, 36 S.W.2d 222, 224 (Tex. Comm'n App. 1931, holding approved). A person "ha[s] the mental capacity to contract if she appreciate[s] the effect of what she [i]s doing and underst[ands] the nature and consequences of her acts." *Mandell & Wright v. Thomas*, 441 S.W.2d 841, 845 (Tex. 1969). Importantly, "[n]ervous tension and anxiety" do not "preclude[] [a] person from understanding the nature and consequences of his (her) acts." *Schmaltz v. Walder*, 566 S.W.2d 81, 84 (Tex. Civ. App.—Corpus Christi 1978, writ ref'd n.r.e.). In *Schmaltz*, the court found no genuine question as to whether a party had mental capacity to contract, even though around the time of contracting she "'suffered from emotional and mental distress,'" claimed "'she was unable to act rationally,'" "would get nervous and, at times, would start crying." *Id.* Similarly, the Texas Supreme Court held "as a matter of law" that a contracting party "possessed the mental capacity to contract at the time she executed the agreement," despite "testimony . . . that she was 'in shock'" as a result of "learn[ing] of her husband's death" three days earlier. *Mandell & Wright*, 441 S.W.2d at 845. Another court rejected a mental-incapacity argument from a contracting party who "at the time of his signing the release . . . had just suffered a serious financial reversal," and "claimed that due to extreme mental and emotional stress he 'wasn't thinking straight' and that he was not mentally competent 'to actually conduct business and so forth'"—with the court noting that "these assertions [were] not founded on any medical testimony." *Buddy L, Inc. v. Gen. Trailer Co., Inc.*, 672 S.W.2d 541, 548 (Tex. App.—Dallas 1984, writ ref'd n.r.e.). "Mere nervous tension, anxiety or personal problems do not amount to mental incapacity." *Id.*

No. 21-20205

In light of the foregoing case law, we find no plain error in the district court's holding that Prince-Moore's experience with domestic violence and her residence in a shelter did not make plausible an inference that she did not understand the nature of her actions in signing the Agreement. The "[f]actual allegations" in her complaint did not "raise . . . above the speculative level" the possibility that she lacked capacity to validly sign a contract. *Twombly*, 550 U.S. at 555. Though she described an extremely stressful period in her life, she did not explain how this stress made her unable to understand the nature of the Agreement. Without such an explanation, her alleged ordeal (traumatic as it undoubtedly was) is by itself no stronger basis for voiding a contract than the various forms of extreme mental stress, anxiety, shock, and other personal problems that the aforementioned Texas cases held were insufficient to render contracts void for incapacity.

The signed Agreement itself bolsters this conclusion.[3] The language releasing claims against TDECU is in bold, all-capital letters (unlike the surrounding text) and appears in a paragraph titled, "Release, Assignment of All Claims, and Covenant Not to Sue." Prince-Moore took six days to sign the Agreement after it was provided to her, and per the Agreement's terms, had seven more days after execution to revoke her assent. She therefore had ample time to weigh her options before deciding whether to sign. In addition, when Prince-Moore signed the Agreement, she wrote next to her signature,

---

[3] A copy of the signed Agreement was attached to TDECU's motion to dismiss and was considered by the magistrate judge in her report and recommendation. Although a district court ordinarily "may not go outside the complaint" in deciding a Rule 12(b)(6) motion to dismiss, there is a "limited exception" permitting "consideration of documents attached to a motion to dismiss," including contracts, so long as such "documents . . . are referred to in the plaintiff's complaint and are central to the plaintiff's claim." *Scanlan v. Texas A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003). Here, the Agreement was mentioned in Prince-Moore's complaint and was central to her claim. The district court therefore properly considered the document in ruling on TDECU's motion to dismiss.

"No tax's taken out please!" (evidently referring to the severance payment promised in the Agreement). We think that, together, the Agreement's conspicuous and clear waiver language, the substantial time afforded to Prince-Moore to read and consider the Agreement, and her handwritten message next to her signature support the district court's conclusion that she understood the nature of her actions in signing the Agreement: she was giving up her right to sue TDECU in exchange for a severance payment. At the very least, the district court's conclusion to that effect was not plainly erroneous.

IV

Because we affirm the district court's determination that Prince-Moore released any claims she may have had against TDECU under the FMLA or for gender, race, or age discrimination, we need not reach the issue of whether she stated claims under any of those legal theories.

For these reasons, the district court's judgment is AFFIRMED.