ACCEPTED
04-15-00623-CV
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
11/23/2015 12:14:38 PM
KEITH HOTTLE
CLERK

NO. 04-15-00623-CV

IN THE COURT OF APPEALS
FOR THE FOURTH DISTRICT OF TEXAS
AT SAN ANTONIO

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS

11/23/2015 12:14:38 PM

KEITH E. HOTTLE
Clerk

IN RE ESTATE OF MARJORIE A. CHILDS

On Appeal from Probate Court No 2,
Bexar County, Texas

_____

**BRIEF OF APPELLANTS
PAMELA ANN CHILDS McCASKILL
AND SUSAN CHILDS ADDISON**

_____

JUDITH R. BLAKEWAY
State Bar No. 02434400
judith.blakeway@strasburger.com
JAMES. MAVERICK McNEEL
State Bar No. 24035491
james.mcneel@strasburger.com
STRASBURGER & PRICE, LLP
2301 Broadway Street
San Antonio, Texas 78215
(210) 250-6000 / (210) 258-6100 (fax)

ATTORNEYS FOR APPELLANTS

**ORAL ARGUMENT REQUESTED**

## IDENTITY OF PARTIES AND COUNSEL

In accordance with Rule 38.1(a) of the Texas Rules of Appellate Procedure, Appellant provides the following complete list of all parties and counsel to the trial court's order that forms the basis of this appeal.

| *Party* | *Counsel* |
|---|---|
| Pamela Ann Childs McCaskill<br>    Appellant | JUDITH R. BLAKEWAY<br>State Bar No. 02434400<br>judith.blakeway@strasburger.com<br>JAMES MAVERICK MCNEEL<br>State Bar No. 24035491<br>james.mcneel@strasburger.com<br>DAVID P. STANUSH<br>STATE BAR NO. 19056300<br>david.stanush@strasburger.com<br>ANDREW L. KERR<br>andy.kerr@strasburger.com<br>STATE BAR NO. 11339500<br>STRASBURGER & PRICE LLP<br>2301 BroadwayStreet<br>San Antonio, Texas 78205<br>(210) 250-6004 Telephone<br>(210) 258-2706 Facsimile |
| Susan Childs Addison<br>    Appellant | BEN A. WALLIS, III<br>State Bar No. 24060793<br>BEN A. WALLIS LAW PC<br>8200 IH 10 West #101<br>San Antonio, Texas 78230<br>(210) 525-1500 / (210) 525-9323 (fax)<br>baw3@wallislawsa.com |

| Party | Counsel |
|---|---|
| Mollie Allen Childs, Appellee | DAVID JED WILLIAMS<br>State Bar No. 21518060<br>jwilliams@hfgtx. com<br>RUDY A. GARZA<br>State Bar No. 07738200<br>rugar@hfgtx. com<br>CHARLES M. HORNBERGER<br>State Bar No. 10002700<br>boxy@hfgtx. com<br>STEPHANIE L. CURETTE<br>State Bar No. 24076780<br>scurette@hfgtx. com<br>HORNBERGER SHEEHAN FULLER & GARZA, INC.<br>7373 Broadway, Suite 300<br>San Antonio, Texas 78209<br>(210) 271-1700 / (210) 271-1730 (fax) |

# TABLE OF CONTENTS

Identity of Parties and Counsel ................................................................................ ii

Table of Contents .............................................................................................. iv

Statement of the Case ......................................................................................... 1

Issues Presented ............................................................................................... 2

Statement of Facts ............................................................................................. 3

Summary of Argument ......................................................................................... 9

Standard of Review ........................................................................................... 11

Argument ........................................................................................................ 12

    I.      The trial court erred in granting Mollie Child's motion for summary judgment. ....................................................................... 12

          A.    There are genuine issues of material fact about whether the mistake was material and mutual. ................................. 14

          B.    There are genuine issues of material fact about whether the agreement to split the proceeds of the Anheuser Busch stock among the three sisters lacks consideration. ........ 20

    II.     The trial court erred in granting rescission. ..................................... 23

          A.    Mollie Childs did not plead for rescission. .............................. 23

          B.    Mollie Childs has unclean hands. ........................................... 23

Prayer .......................................................................................................... 26

Certificate of Service ....................................................................................... 27

Certificate of Compliance .................................................................................. 28

Appendix ....................................................................................................... 29

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Argee Corp. v. Solis*,
932 S.W.2d 39 (Tex. App.—Beaumont 1995), *rev'd on other grounds sua nom. Green Int'l v. Solis*, 951 S.W.2d 384 (Tex. 1997) ................................ 23

*Badouh v. Hale*,
22 S.W.3d 392 (Tex. 1999) ............................................................................ 21

*Barr v. Daggett*,
153 S.W. 120 (Tex. 1913) .............................................................................. 21

*Buck v. Palmer*,
381 S.W.3d 525 (Tex. 2012) .......................................................................... 11

*Burnett v. James*,
564 S.W.2d 407 (Tex. Civ. App.—Dallas 1978, writ dism'd) ......................... 23

*Bush v. Gaffney*,
84 S.W.2d 759 (Tex. App.—San Antonio 1935, no writ) ............................... 23

*Cavazos v. Cavazos*,
246 S.W.3d 175 (Tex. App.—San Antonio 2007, pet. denied) ....................... 20

*Chambers v. Huggins*,
709 S.W.2d 219 (Tex. App.—Houston [14th Dist.] 1986, no writ) ................ 13

*City of Keller v. Wilson*,
168 S.W.3d 802 (Tex. 2005) .......................................................................... 11

*Cooper v. Cochran*,
288 S.W.3d 522 (Tex. App.—Dallas 2009, no pet.) ...................................... 23

*De Monet v. PERA*,
877 S.W.2d 352 (Tex. App.—Dallas 1994, no writ) ......................... 12, 13, 17, 18

*Durham v. Uvalde Rock Asphalt Co.*,
599 S.W.2d 866 (Tex. Civ. App.—San Antonio 1980, no writ) ..................... 17

*Estes v. Republic Nat'l Bank*,
462 S.W.2d 273 (Tex. 1970) .......................................................................... 12

*Goodyear Tire & Rubber Co. v. Mayes*,
   236 S.W.3d 754 (Tex. 2007) ............................................................... 12

*Green v. Morris*,
   43 S.W.3d 604 (Tex. App.—Waco 2001, no pet.) ................................... 13

*Hale v. Hollon*,
   39 S.W. 287 (Tex. 1897)....................................................................... 21

*Huie v. DeShazo*,
   922 S.W.2d 920 (Tex. 1996) ................................................................ 24

*Lesikor v. Rappeport*,
   33 S.W.3d 202 (Tex. App.—Texarkana 2000, pet. denied) ................... 24

*Missouri, K & T Ry. Co. v. Edwards*,
   176 S.W. 60 (Tex. Civ. App.—Texarkana 1915, no writ)...................... 22

*Montgomery v. Kennedy*,
   669 S.W.2d 309 (Tex. 1984) ................................................................ 24

*Morales v. Morales*,
   98 S.W.3d 343 (Tex. App.—Corpus Christi 2003, pet. denied)............ 20, 22

*Myrad Props., Inc. v. LaSalle Bank Nat'l Ass'n*,
   300 S.W.3d 746 (Tex. 2009) ................................................................ 16

*Neely v. Wilson*,
   418 S.W.3d 42 (Tex. 2013) .................................................................. 11

*Nixon v. Mr. Prop, Mgmt. Co.*,
   690 S.W.2d 546 (Tex. 1985) ................................................................ 11

*Parker v. Blackmon*,
   553 S.W.2d 623 (Tex. 1977) ................................................................ 20

*Petrey v. John F. Buckner & Sons*,
   280 S.W.2d 641 (Tex. Civ. App.—Waco 1955, writ ref'd n.r.e.) .......... 13

*Plains Cotton Co-op Ass'n v. Wolf*,
   553 S.W.2d 800 (Tex. Civ. App.—Amarillo 1977, writ ref'd n.r.e.)...... 17, 20, 22

*Schenck v. Ebby Halliday Real Estate Inc.*,
803 S.W.2d 361 (Tex. App.—Fort Worth 1990, no writ) ..................................... 23

*Simpson v. Simpson*,
387 S.W.2d 771 (Tex. Civ. App.—Eastland 1965, no writ) ............................... 17

*Sun Oil Co. v. Bennett*,
125 Tex. 540, 84 S.W.2d 447 (Tex. 1935) ............................................................ 12

*Taylor v. Arlington Indep. School Dist.*,
335 S.W2d 371 (Tex. 1960) ..................................................................................... 16

*Walden v. Affiliated Computer Services, Inc.*,
97 S.W.3d 303 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) ................ 13

*Wallerstein v. Spirt*,
8 S.W.3d 774 (Tex. App.—Austin 1999, no pet.) ................................................. 12

*Williams v. Glash*,
789 S.W.2d 261 (Tex. 1990) ................................................................ 12, 13, 16, 17

**RULES**

TEX. R. CIV. P. 166(a)(c),(i) ........................................................................................ 11

**OTHER AUTHORITIES**

7 A. Corbin, CONTRACTS § 28.41 (Rev. ed. 2002) ............................................................ 22

8 A. Corbin, CONTRACTS § 38.10 at 468 (Rev. ed. 1999) ................................................. 21

RESTATEMENT (SECOND) OF CONTRACTS § 152 (1981) ................................................ 17

## STATEMENT OF THE CASE

This is an action to void a contract for mutual mistake and lack of consideration. Bertha Allen's will left certain stock to her daughter Marjorie. Marjorie had three daughters—Mollie, Pamela and Susan. Before their mother died, they entered into an agreement to divide two brokerage accounts containing proceeds of the stock that they expected to receive on their mother's death. After their mother died, Mollie sought to avoid the agreement, claiming that it was based on a mutual mistake—that Bertha's will gave her daughter Marjorie only a life estate in the stock—and lacked consideration. The probate court held that Bertha's will left the stock outright to her daughter Marjorie and did not create a life estate.

The parties filed cross-motions for summary judgment. Pamela (joined by Susan) moved for summary judgment on Mollie's claim that the agreement was unenforceable for mutual mistake, arguing that the assumption that the will conveyed only a life estate in the stock was a mistake of law which is not a ground for avoiding a contract. Mollie responded and filed a motion for reconsideration of a previously denied motion for summary judgment that the agreement was unenforceable for lack of consideration and mutual mistake.

The trial court reconsidered, granted Mollie's motion, denied Pamela's and Susan's motion, found that the agreement was unenforceable and rescinded as a matter of law, and certified its order for interlocutory appeal. This Court granted permission to appeal.

## ISSUES PRESENTED

I.      The trial court erred in granting Mollie's motion for summary judgment because:

- there are genuine issues of material fact about whether the mistake was mutual and material

    1.  there are genuine issues of material fact about whether Mollie held the mistaken belief that her grandmother's will gave her mother only a life estate in the stock when Mollie agreed to split the proceeds with her sisters; and

    2.  there are genuine issues of material fact about whether the mistake about the life estate was material;

    3.  the mistake that was the basis for the bargain—that all three daughters were beneficiaries of the Raymond James account—was not mutual; and

- there are genuine issues of material fact about whether the agreement to split the brokerage accounts among the three sisters lacks consideration

    1.  Each sister gave up her expectancy under her grandmother's or her mother's will in exchange for the split set forth in the agreement;

    2.  Pamela and Susan's forbearance to sue is consideration for the agreement; and

    3.  Pamela and Susan mistakenly believed that they were beneficiaries under the Raymond James account because that is what Mollie told them; she should not now profit from her own wrongdoing.

II.     The trial court erred in granting rescission because:

- Mollie did not plead for it; and

- there are genuine issues of fact about whether Mollie has unclean hands.

## STATEMENT OF FACTS

Bertha Allen was the mother of Marjorie Allen Childs and the grandmother of Marjorie's three daughters: Mollie Allen Childs, Pamela Ann Childs McCaskill, and Susan Kaye Childs Addison. C.R. 667.

Bertha Allen owned stock in Campbell Taggart (which was later acquired by Anheuser Busch). C.R. 667. In her will she left the stock to her daughter, Marjorie Allen Childs:

> I give all shares of stock owned by me in Campbell Taggart Associated Bakers, Inc. at the time of my death to my daughter, Marjorie Allen Childs, with the request that she use only the income in cash dividends from said shares during her lifetime and that on her death she make provision for said shares to be divided equally among her daughters, or the issue of any deceased daughter. Should it become wise at any time to sell these shares, it is my desire that the proceeds, or any reinvestment of the proceeds, be held and disposed of by my daughter at her death in the same manner.

C.R. 261, 667-68.

Bertha died, and her will was admitted to probate in 1981. C.R. 668.

In 1992, Marjorie made a gift to Mollie of about $190,000 of the stock. C.R. 668. The accountant obtained the amount from Mollie, no appraisal was done. C.R. 786, 788. (He testified that he found it "astounding" that stock that is now worth collectively $6 million, that one third of it in 1992 was worth only $190,000. C.R. 787).

In 1993, Marjorie created the Marjorie Allen Childs Trust. Marjorie and Mollie were trustees. Marjorie was beneficiary during her life; and Mollie, Pamela and Susan were remainder beneficiaries. C.R. 997-1006.

From at least the time Marjorie moved into the Forum assisted living facility in 2005, until Marjorie's death in 2013, Mollie was in charge of all of Marjorie's finances. C.R. 669. In 2008, Marjorie gave Mollie her power of attorney. 4 Supp. C.R. 1195–96.

In November 2008, InBev acquired Anheuser Busch and redeemed the stock for cash. C.R. 668. This precipitated some estate planning by Marjorie and Mollie. C.R. 751. Mollie, who was a lawyer, C.R. 784, asked for a legal opinion about whether Bertha Allen's will left a life estate. In 2008, Mike Donelson, Marjorie's accountant, retained James Beck to determine if Bertha's will created a life estate. He discussed with Mollie Mr. Beck's answer that "it could go either way." C.R. 694, 771. He told her that the Bertha Allen life estate language was "precatory," meaning that no one had to follow it. C.R. 780. Mollie knew from what Mr. Beck opined that it was 50/50 or 60/40 in favor of a life estate, but far from certain. C.R. 817.

Mr. Donelson never had any conversation with his client Marjorie, about whether there was a life estate; he spoke only with Mollie. C.R. 702-703. He never met Marjorie, C.R. 828, he met only Mollie. C.R. 705. Mollie never told him about

the beneficiary designations on the Raymond James account. C.R. 720. He did not know that Mollie had put her name on the Raymond James account as beneficiary. C.R. 829:18-22. Mollie was the one running the show with regard to accounts and helping him report the taxes. C.R. 733, 772.

Mollie had James Beck, an attorney in Houston, prepare a will for her mother. Mr. Beck never met Marjorie in person. 4 Supp. C.R. 299–300. All communications with Mr. Beck were through Mollie or in Mollie's presence. 4 Supp. C.R. 299. He did not inquire into assets owned by Marjorie or how they were titled. 4 Supp. C.R. 308–09. Mr. Beck was not informed of Marjorie's previous gifts to Mollie, 4 Supp. C.R. 324–25, or any account designations. 4 Supp. C.R. 308, 336–37.

On November 20, 2008, Marjorie signed the will prepared by Mr. Beck, in which she left the Anheuser stock per stirpes to her three daughters:

<u>Remainder Interest under Bertha Allen's Will</u>

Pursuant to the requirement of the life estate created for my benefit under Section II of the Will of Bertha Allen, the Anheuser Busch stock, which is derived from the Campbell Taggart Associated, Inc., stock addressed in the aforementioned Section II of Bertha Allen's Will, shall be distributed to my daughters and their descendants, per stirpes. Furthermore, and also pursuant to the requirement of the life estate created for my benefit under Section II of Bertha Allen's Will, if at the time of my death I no longer own the Anheuser Busch stock, then the proceeds or reinvestment of the proceeds shall be distributed to my daughters and their descendants, per stirpes.

C.R. 662.

On December 23, 2008, just a month after signing her will, Marjorie opened two brokerage accounts with the proceeds from the redemption of the Anheuser Stock—one at Federated Securities Inc., and the second at Raymond James & Associates. C.R. 668. Two-thirds of the proceeds of the sale of the Anheuser shares were placed in a Federated account representing Pamela and Susan's shares. C.R. 668. Mollie's one-third of the stock was placed in a Raymond James account.

When she opened the Federated account, Marjorie Childs executed a transfer-on-death (TOD) account agreement, designating the following beneficiaries: Mollie Childs (33%), Pamela McCaskill (34%), and Susan Addison (33%). She also executed a TOD account agreement at Raymond James that listed only Mollie as a beneficiary. Mollie filled out the Raymond James account form and then had her mother sign. 1 Supp. C.R. 136:14-137:16; 138:14-23; Ex 33.

Contrary to what she wrote on the account, Mollie told Pamela and Susan that all three children were listed as TOD beneficiaries on the Raymond James account, as well as on the Federated Account. Ex 38; 1 Supp. C.R. 205:1-7; 216:11-16. Mollie did not tell her sisters she was sole beneficiary on the Raymond Jones account. 1 Supp. C.R. 286:19-24. Mollie also told her sisters that the transfer on death designation was "meaningless" and their grandmother's will would control how the accounts were distributed. Ex 46; 1 Supp. C.R. 166:16-22.

In 2009, Mollie knew it was possible that the IRS would construe the language in Bertha's will as precatory so that the will did not create a life estate, and the funds would either go under the TOD, or the sisters would have to agree on a disposition. 1 Supp. C.R. 183:21–184:17. James Beck, a lawyer retained to give an opinion on whether Bertha's will created a life estate in the stock, told Mollie that he "didn't know for sure and the only way to determine it would be to do a declaratory judgment." 4 Supp. C.R. 300:23–301:12. Despite being advised by a lawyer that it was possible, if not probable, that their mother did not hold the stock under a life estate, but owned it outright, Mollie told Pamela and Susan that the accounts would pass under the life estate created in Bertha's will. C.R. 694, 771, 780, 817.

After Mollie admitted to Pamela and Susan that she had already received her share of the stock in 1992, Pamela and Susan threatened to sue or take action to protect Marjorie's wishes if Mollie did not equalize the accounts. C.R. 669. Pamela consulted an attorney about suing Mollie. C.R. 669. Mollie pleaded with Pamela not to sue her and agreed to relinquish her interest in the Federated account: "please don't do this … I don't want or need your money. I will not take your money … I will honor the history … if you want me to sign something you draft reassuring you I do not want the rbc life estate I will do so." 1 Supp. C.R. 205:10-206:14 Ex 42. Pamela, Mollie, and Susan then signed an agreement to split the

7

proceeds in the brokerage accounts, and Pamela and Susan forbore from suing Mollie. The agreement provided:

> ### Agreement Regarding Remainder Interest
> ### in Bertha Allen Life Estate
>
> The entire assets subject to the life estate created by the will of Bertha Allen and referenced in the will of Marjorie A. Childs signed November 20, 2008, are contained within 2 brokerage accounts styled "Mollie Childs POA U/W Bertha Allen DTD 12/5/2008 FBO Marjorie Childs Life Tenant." One brokerage account is held under account 767-00625 at Federated Securities, the other under account 1460714 at Raymond James & Associates. In the event Pamela, Susan and Mollie are living at the time of death of Marjorie A. Childs, the accounts are to be divided and distributed as follows:
>
> The Federated Securities account to be split equally and distributed between Pam and Susan; the Raymond James account to be distributed in its entirety to Mollie.

C.R. 677; C.R. 669.

Marjorie Childs passed away in 2013, and her will was admitted to probate in 2014. C.R. 670. Mollie was the executrix. C.R. 662. When Mollie refused to honor the agreement, a dispute arose between the three sisters. C.R. 671.

Mollie sued Susan and Pamela, seeking a declaratory judgment that Marjorie owned the funds in the Federated and Raymond James accounts outright, and asking the Court to determine whether the "Agreement Regarding Remainder Interest in Bertha Allen Life Estate" was valid and enforceable, including (1) whether there was consideration for the agreement and (2) whether the

8

agreement was made under a misconception of material fact, namely, that the funds in the accounts were subject to a life estate only. C.R. 162-79.

The trial court, after initially denying summary judgment to Mollie, C.R. 159, reconsidered and granted summary judgment, holding the agreement unenforceable and rescinded as a matter of law. C.R. 1321. The trial court certified its order for interlocutory appeal, C.R. 1321, and this Court granted Pamela's and Susan's petition for interlocutory appeal.

## SUMMARY OF ARGUMENT

To void a contract due to mistake, the mistake must be mutual and material. The alleged mistake here—whether Bertha Allen's will created a life estate in the stock— is neither. There are genuine issues of material fact about whether Mollie held the mistaken belief that her grandmother's will gave her mother only a life estate in the stock when Mollie agreed to split the proceeds with her sisters. Her testimony to that effect is belied by her earlier actions

- in accepting a gift of the stock from her mother in 1992 (which her mother would have no right to give if all she had was a life estate); and

- by designating herself as a beneficiary on the TOD account (which would have been ineffective if all her mother had was a life estate).

Moreover, Mollie's subjective statements about her belief are incompetent summary judgment evidence. Because she is an interested witness, her testimony does nothing more than create a fact issue. A jury was not required to believe

9

Mollie's self-serving after-the-fact testimony. Accordingly, the court erred in granting summary judgment.

There are genuine issues of material fact about whether the mistake about the life estate was material. The purpose of the agreement was to partition the daughters' equal interests. Whether the daughters' expectancy of receiving equal shares of the proceeds derived from Bertha's will or Marjorie's will was immaterial. If there was a life estate, each child would take one-third under Bertha's will. If there was not, each child would take one-third under Marjorie's will. And—as far as Susan and Pamela knew—each child would take one-third under the TOD beneficiary designations on each account.

The mistake that was the basis of the bargain—that all three daughters were beneficiaries of both the Federated account and the Raymond James account—was not mutual. The "mistake" that Pamela and Susan made was that they thought they were beneficiaries of the Raymond James account so they could exchange their interest in that account for Mollie's interest in the Federated account. That mistake was not mutual. Mollie knew better.

There are genuine issues of material fact about whether the agreement to split the proceeds of the Anheuser Busch stock among the three sisters lacks consideration. Each sister gave up her expectancy under her grandmother's or her mother's will in exchange for the split in the agreement—that is consideration.

Pamela and Susan's forbearance to sue is also consideration for the agreement. Susan and Pamela mistakenly believed that they were beneficiaries of the Raymond James account because that is what Mollie told them; she should not now be heard to claim otherwise after they relied on her representations in entering into the agreement.

Finally, the trial court erred in granting rescission because:

• Mollie did not plead for it; and

• Mollie has unclean hands.

The trial court erred in granting summary judgment to Mollie. Its judgment should be reversed and remanded.

## STANDARD OF REVIEW

Summary judgments are reviewed de novo. *Neely v. Wilson*, 418 S.W.3d 42, 509 (Tex. 2013). The movant for a traditional summary judgment has the burden of showing that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Nixon v. Mr. Prop, Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985). A fact issue exists if there is more than a scintilla of probative evidence. *Buck v. Palmer*, 381 S.W.3d 525, 527 & n.2 (Tex. 2012); TEX. R. CIV. P. 166(a)(c),(i). The record is reviewed "in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion." *City of Keller v. Wilson*, 168 S.W.3d 802, 824 (Tex. 2005). An appellate court reviewing a summary judgment must consider

11

whether reasonable and fair minded jurors could differ in their conclusions in light of all of the evidence presented. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007).

## ARGUMENT

### I.     The trial court erred in granting Mollie Child's motion for summary judgment.

Under Texas law, when parties to an agreement have contracted under a mutual misconception of material fact, the agreement is voidable under the doctrine of mutual mistake. *Williams v. Glash*, 789 S.W.2d 261, 264 (Tex. 1990). However, the doctrine of mutual mistake is applied only in rare circumstances in order to allow parties to "rely on the finality" of their agreements and to prevent the routine use of the doctrine to avoid the effects of an "unhappy bargain." *Id.* at 265; *see Wallerstein v. Spirt*, 8 S.W.3d 774, 781 (Tex. App.—Austin 1999, no pet.). A mutual mistake must be proven by "clear, exact, and satisfactory evidence." *Estes v. Republic Nat'l Bank*, 462 S.W.2d 273, 75 (Tex. 1970) (citing *Sun Oil Co. v. Bennett*, 125 Tex. 540, 84 S.W.2d 447, 452 (Tex. 1935)). To be entitled to rescind an agreement due to a mutual mistake, a party must show that there exists (1) a mistake of fact, (2) held mutually by the parties, (3) which materially affects the agreed upon exchange. *Wallerstein*, 8 S.W.3d at 781; *De Monet v. PERA*, 877 S.W.2d 352, 357 (Tex. App.—Dallas 1994, no writ).

12

The evidence must show that both parties were acting under the same misunderstanding of the same material fact. *Walden v. Affiliated Computer Services, Inc.*, 97 S.W.3d 303 (Tex. App.—Houston [14th Dist.] 2003, pet. denied); *Green v. Morris*, 43 S.W.3d 604, 606 (Tex. App.—Waco 2001, no pet.).

"[T]he mistake must relate to the subject matter of the contract and not to a matter that is merely collateral or incidental to the contract." *Petrey v. John F. Buckner & Sons*, 280 S.W.2d 641, 643 (Tex. Civ. App.—Waco 1955, writ ref'd n.r.e.); *see also De Monet*, 877 S.W.2d at 359 (relief only appropriate where mistake upsets basis of contract); *Chambers v. Huggins*, 709 S.W.2d 219, 224 (Tex. App.—Houston [14th Dist.] 1986, no writ) (requiring party show that mistake was mutual and that it was material inducement to transaction).

The question of mutual mistake is determined not by "self-serving subjective statements of the parties' intent . . . but rather solely by objective circumstances." *Williams*, 789 S.W.2d at 264. These include the knowledge of the parties and the substance of the negotiations at the time of the contract execution. *De Monet*, 877 S.W.2d at 358; *see Williams*, 789 S.W.2d at 24.

**A.** **There are genuine issues of material fact about whether the mistake was material and mutual.**

    **1.** **There are genuine issues of material fact about whether—when Mollie agreed to split the proceeds of the Anheuser Busch stock with her sisters—Mollie held the mistaken belief that her grandmother's will gave her mother only a life estate.**

Mollie now says she believed that her mother had only a life estate in the Anheuser Bush stock. But her recent testimony is belied by her earlier actions. If Mollie truly believed that a valid life estate was created by Bertha's will, then she must have known that in 1992 her mother had no right to gift her $190,000 of shares of the Anheuser Bush stock. The fact that Mollie took the stock is some evidence that she thought her mother had the right to give it to her, i.e., that the bequest in her grandmother's will was an outright gift, not merely a life estate.

If Mollie really thought that a valid life estate was created by Bertha's will, then she must have known when she filled out the TOD account forms and had her mother sign them, that those forms would be ineffective because any right to the stock would pass to Mollie and her sisters under Bertha's will, not under any TOD designation. There would have been no reason to designate herself as the sole beneficiary of the Raymond James account, no reason to hide what she had done from her sisters, and no reason to affirmatively misrepresent to them that they were also beneficiaries on that account when they were not.

14

This evidence would support an inference that Mollie *did not* believe that Bertha's will created just a life estate. A jury could infer from these actions that Mollie believed that her mother owned the proceeds of the stock outright.

Additional evidence supports the conclusion that Mollie—unlike her sisters—was not laboring under the misapprehension that all her mother owned was a life estate. Mollie had obtained a legal opinion that the language in Bertha's will was merely precatory, and it was possible that her mother did not have merely a life estate, but actually owned the stock. Mollie was an attorney and much more knowledgeable in legal affairs than her sisters. Mollie knew that if her mother in fact owned the proceeds of the stock outright, Mollie would get all the Raymond James account under the TOD beneficiary designation. Mollie knew—but her sisters did not—that she was the only beneficiary of the Raymond James account. Mollie knew that the agreement whereby her sisters gave up their (nonexistent) rights to the Raymond James account would be unenforceable for lack of consideration. Mollie knew that ultimately Mollie would get much more than the one-third of her mother's estate that her mother intended her to have.

Moreover, the summary judgment evidence relied on by Mollie—the subjective statements of the parties—is incompetent to establish mutual mistake. Mutual mistake is determined by the objective circumstances surrounding the execution of the document and not by self-serving, subjective statements of the

parties' intent. *Myrad Props., Inc. v. LaSalle Bank Nat'l Ass'n*, 300 S.W.3d 746, 751 (Tex. 2009) ("The question of mutual mistake is determined not by self-serving subjective statements of the parties' intent, which would necessitate trial to a jury in all such cases, but rather solely by objective circumstances surrounding execution of the contract"); *Williams v. Glash*, 789 S.W.2d 261, 264 (Tex. 1990) (same).

The only witness testifying about Mollie's mistaken belief was Mollie, who was an interested witness. The testimony of an interested witness does no more than raise a fact issue to be determined by the jury. *Taylor v. Arlington Indep. School Dist.*, 335 S.W2d 371, 376 (Tex. 1960). "When testimony comes from an interested party and is of such a nature that it cannot be readily contradicted if untrue, an issue relating to the credibility of the witness is presented." *Id.* That is the situation here. Mollie's testimony did nothing more than create an issue of fact to be determined by the jury as to whether a mistake was in fact made.

In sum, a jury was not required to believe Mollie's self-serving after-the-fact testimony. There was ample evidence from which a jury could conclude that Mollie had a motive and the opportunity to obtain a disproportionate share of her mother's estate. Because there was more than a scintilla of evidence that Mollie did not enter into the agreement under a mistake of fact and Mollie's testimony

was incompetent, the trial court erred in granting summary judgment for Mollie. Its judgment should be reversed and remanded for trial.

**2.      There are genuine issues of material fact about whether the mistake about the life estate was material.**

Where a mistake of both parties at the time the contract was made as to a basic assumption on which the contract was made has a material effect on the agreed exchange of performances, the contract is voidable. . . .” RESTATEMENT (SECOND) OF CONTRACTS §152 (1981); *Durham v. Uvalde Rock Asphalt Co.*, 599 S.W.2d 866, 869 (Tex. Civ. App.—San Antonio 1980, no writ) (a material mistake is one that involves the subject matter of the contract and the substance thereof); *de Monet v. PERA*, 877 S.W.2d 352, 357 (Tex. Civ. App.—Dallas, 1994, no writ) (same).

A mutual mistake is not material if it relates merely to a collateral matter. It must be “essential to an understanding of the consequences of the agreement.” *Plains Cotton Co-op Ass'n v. Wolf*, 553 S.W.2d 800, 805 (Tex. Civ. App.—Amarillo 1977, writ ref'd n.r.e.) (quoting *Simpson v. Simpson*, 387 S.W.2d 771, 719 (Tex. Civ. App.—Eastland 1965, no writ)).

When determining the materiality of such a mistake, a court considers the surrounding circumstances, the contract itself, the knowledge of the parties at the time of the contract, the extent of negotiations and discussions regarding the alleged mutual mistake, and the amount of consideration paid. *See Williams*,

17

789 S.W.22d at 264; *de Monet v. PERA*, 877 S.W.2d 352 (Tex. App.—Dallas 1994, no writ).

Here the basic assumption underlying the contract was that all three children would share equally in the proceeds of the Anheuser Busch stock. The agreement was to partition their equal interests. C.R. 670. Whether the daughters' expectancy of receiving equal shares of the proceeds derived from Bertha's will (if all Marjorie had was a life estate) or Marjorie's will (if Bertha left the stock to Marjorie outright) was immaterial. If there was a life estate, each child would take one-third under Bertha's will. If there was not, each child would take one-third under Marjorie's will. And—as far as Susan and Pamela knew—each child would take one-third under the TOD account designations on both accounts.

Pamela and Susan did not know that Mollie was the sole beneficiary of the Raymond James account. Mollie did not tell them. Mollie told them they were all three beneficiaries of both accounts. Mollie told them that all Marjorie had was a life estate so their expectation was that they would receive their share of the stock proceeds under Bertha's will. So it did not matter what the beneficiary designation on the accounts said or how Marjorie left the stock in her will.

Mollie, on the other hand, knew that it was doubtful that Marjorie had a life estate in the stock, knew she had already received a disproportionate share of her mother's estate, and knew that on her mother's death, she would get all of the

18

Raymond James account. So it was not important to her that her sisters give up their interests in the Raymond James account because she knew they had no such interests. That was not what she was bargaining for in the agreement; instead she was attempting to mollify her sisters and stave off a lawsuit.

At a minimum, there is conflicting summary judgment evidence about the parties' knowledge, the substance of the negotiations, and the significance of Mollie's misrepresentations. Therefore, the trial court erred in granting Mollie summary judgment.

### 3. The mistake that was the basis of the bargain—that all three daughters were beneficiaries of both the Federated account and the Raymond James account—was not mutual.

In the contract the agreed-on exchange was that Pamela and Susan would split the Federated account, and Mollie would get the Raymond James account. That agreement makes sense only if all three daughters have interests in both accounts. The "mistake" that Pamela and Susan made was that they thought they were beneficiaries of the Raymond James account, as well as the Federated account. That mistake was not mutual. Mollie knew better. But she did not tell anyone—not her sisters, 1 Supp. C.R. 205:1-7; not the lawyer who prepared her mother's will, 4 Supp. C.R. 307–08, 336–37; not the accountant who advised her, 1 Supp. C.R. 204:1-17. What, in Mollie's view, makes the contract unenforceable is that her sisters did not give her anything in exchange for her share of the Federated account because she already owned all of the Raymond James account. But that fact was known to Mollie when she signed the contract.

19

If the facts had been as Mollie represented, then whether Bertha's will left the stock in a life estate or outright would have made no difference—all three daughters would have shared equally either way. It was the TOD account designation on the Raymond James account that was determinative, not whether Bertha's will created a life estate. And that key fact was known by Mollie, but not by her sisters. They executed the contract in reliance on Mollie's false representations. These facts afforded Pamela and Susan grounds to be relieved from the contract, but do not allow Mollie to escape from a bargain she made knowing that she was the sole beneficiary of the Raymond James account. *Morales v. Morales*, 98 S.W.3d 343, 347 (Tex. App.—Corpus Christi 2003, pet. denied); *Plains Cotton Corp. Ass'n v. Wolf*, 553 S.W.2d 800, 804 (Tex. Civ. App.— Amarillo 1977, writ ref'd n.r.e.).

**B.     There are genuine issues of material fact about whether the agreement to split the proceeds of the Anheuser Busch stock among the three sisters lacks consideration.**

**1.     Each sister gave up her expectancy under her grandmother's or her mother's will in exchange for the split in the agreement—that is consideration.**

Mollie contends that the agreement is without consideration because, when they entered the agreement in 2012, Pamela and Susan held no remainder interests in the accounts, and thus no expectancy interests to divide. Both Pamela and Susan were heirs of their mother who had not yet died. An expectancy interest in an estate is adequate consideration to support a contract. *Cavazos v. Cavazos*, 246 S.W.3d 175, 180 (Tex. App.—San Antonio 2007, pet. denied); *Parker v.*

20

*Blackmon*, 553 S.W.2d 623, 624 (Tex. 1977). Here, each sister gave up her expectancy to inherit the proceeds of the Anheuser Busch stock under their grandmother's or mother's will in exchange for the accounts set forth in the agreement.

The facts that none of the children had a present right to any of the funds during Marjorie's life, and she could change the account beneficiaries, or her will, or spend the money before her death, do not prevent an agreement to exchange those rights from being supported by consideration. The "expectancy" of an inheritance or a legacy or a devise or other gift is a right that can constitute consideration, even though there is nothing as yet that can be transferred and the expectant heir or donee has, as yet, no present rights that can be assigned. Nevertheless, if such person promises to turn over to the promisee money or property she shall afterwards receive as an heir or legatee or donee if and when she actually receives it, such a promise is enforceable if and when the condition in fact occurs and is sufficient consideration for a promise given in exchange for it. *Badouh v. Hale*, 22 S.W.3d 392 (Tex. 1999); *Hale v. Hollon*, 39 S.W. 287 (Tex. 1897); *Barr v. Daggett*, 153 S.W. 120 (Tex. 1913).

> An agreement between two expectant persons, each of which hope for a legacy, or inheritance, or other gift, that they will share equally between them or in other agreed portions, has been held to be a valid contract.

8 A. CORBIN, CONTRACTS §38.10 at 468 (Rev. ed. 1999).

21

### 2. Pamela and Susan's forbearance to sue is consideration for the agreement.

Before Mollie signed the agreement, Pamela and Susan threatened to sue her. Mollie, to forestall any such suit or action by her sisters, agreed to—and did— sign an agreement relinquishing her interest in the Federated account. So Pamela and Susan did not sue her. Their forbearance is adequate consideration for the agreement. *Missouri, K & T Ry. Co. v. Edwards*, 176 S.W. 60, 61 (Tex. Civ. App.—Texarkana 1915, no writ) (settlement of a disputed claim is sufficient consideration for a promise because of the detriment to the party consenting to the compromise arising from the alteration of his position).

### 3. Susan and Pamela mistakenly believed that they were beneficiaries of the Raymond James account because that is what Mollie told them; she should not now be heard to claim otherwise after they relied on her representations in entering into the agreement.

When a party enters a contract under a mistaken belief induced by the other party, the innocent party is the one who has the option to rescind the agreement, not the one who was responsible for the mistake. *Morales v. Morales*, 98 S.W.3d 343, 347 (Tex. App.—Corpus Christi 2003, pet. denied); *Plains Cotton Coop. Ass'n v. Wolf*, 553 S.W.2d 800, 804 (Tex. Civ. App.—Amarillo, 1977, writ ref'd n.r.e.); 7 A. CORBIN, CONTRACTS §28.41 (Rev. ed. 2002).

Here, Mollie lied to Susan and Pamela when she told them they were beneficiaries on both accounts. They executed the contract in reliance on her false representation. If a mistake was made, it was brought about by Mollie's misrepresentations. She should not be permitted to get out of a contract on the ground of lack of consideration when she knew that her sisters did not have any interest in the Raymond James account that they believed they were giving up in exchange for the Federated account.

## II. The trial court erred in granting rescission.

### A. Mollie Childs did not plead for rescission.

It was error for the trial court to grant Mollie the relief of rescission because she did not plead for such relief. C.R. 162-76. Rescission must be specifically pleaded. *Cooper v. Cochran*, 288 S.W.3d 522, 533 (Tex. App.—Dallas 2009, no pet.); *Burnett v. James*, 564 S.W.2d 407, 409 (Tex. Civ. App.—Dallas 1978, writ dism'd); *Argee Corp. v. Solis*, 932 S.W.2d 39, 66 (Tex. App.—Beaumont 1995), *rev'd on other grounds sua nom. Green Int'l v. Solis*, 951 S.W.2d 384 (Tex. 1997). Mollie pleaded for declaratory relief, not rescission. C.R. 171. Thus, the trial court erred in awarding her rescission.

### B. Mollie Childs has unclean hands.

To be entitled to rescission, a plaintiff must show that she has clean hands. *Bush v. Gaffney*, 84 S.W.2d 759, 764 (Tex. App.—San Antonio 1935, no writ); cf. *Schenck v. Ebby Halliday Real Estate Inc.*, 803 S.W.2d 361, 366 (Tex. App.—

Fort Worth 1990, no writ) (rescission under DTPA). Pamela pleaded that Mollie had unclean hands C.R. 182, and supported that pleading with evidence sufficient to create a fact issue.

There is more than a scintilla of evidence that Mollie does not have clean hands. As the executrix of her mother's estate and trustee of her trust, she owes fiduciary duties to her sisters, who are the beneficiaries of both. *Montgomery v. Kennedy*, 669 S.W.2d 309, 313 (Tex. 1984) ("Executors of the estate owed beneficiary 'a fiduciary duty of full disclosure of all material facts known to them that might affect [beneficiary's] rights. The existence of strained relations between the parties did not lessen the fiduciary's duty of full and complete disclosure.") *See also Huie v. DeShazo*, 922 S.W.2d 920, 923 (Tex. 1996); *Lesikor v. Rappeport*, 33 S.W.3d 202, 296-97 (Tex. App.—Texarkana 2000, pet. denied). But she abused her trust, assuring her sisters that they could trust her to treat them fairly precisely because she was a fiduciary: "i will be fair with you and Susan because i am in a fiduciary relationship with mother, and i take that very seriously … as a lawyer my career called me to act as a fiduciary. …" Ex 43. Mollie did not treat them fairly. She did not fully disclose all material facts to them; instead she deceived and defrauded them.

Mollie is an attorney; she has specialized knowledge that her sisters do not. She consulted with an attorney before entering into the agreement and was told that

24

the question whether her grandmother left the stock to her mother outright or in a life estate was a close question that could go either way. 1 Supp. C.R. 218:21–219:17.

If Mollie truly believed a valid life estate existed, then she must have known that when their mother made her a $190,000 gift of the stock in 1992, she had no right to do so. Yet Mollie took the stock. The fact that she did so is some evidence that she thought that her mother had the right to give it to her, i.e.—that the bequest in her grandmother's will was an outright gift, not merely a life estate.

Mollie also knew when she filled out the TOD accounts, they were not effective either, because if all Marjorie had was a life estate, then any right to the stock would pass to Mollie and her sisters under Bertha's will, not under any TOD designation. The fact that she nevertheless filled out the TOD account for the Raymond James accounts so that her mother left it all to her as the sole beneficiary is some evidence that she knew that her mother did not have a life estate, but had the power to dispose of the account. This conclusion is further corroborated by the fact that she did not tell her sisters what she had done. In fact, she told them the exact opposite—that Pamela and Susan were also beneficiaries of the Raymond James account—which she knew was not true.

Her sisters relied on what she told them in entering the agreement under the mistaken belief that they were giving up their rights to the Raymond James account

25

in exchange for the Federated account. Mollie should not now be permitted to profit from her own wrongdoing by claiming that there was no consideration for the agreement (because they are not beneficiaries of the Raymond James account) when she is the one who told her sisters they were beneficiaries of that account.

## PRAYER

Pamela and Susan respectfully pray that the trial court's order granting summary judgment and rescission be reversed and the case be remanded for trial, and for such other relief to which Pamela and Susan may be entitled in law or equity.

Respectfully submitted,

_____/s/ *Judith R. Blakeway*_____
JUDITH R. BLAKEWAY
State Bar No. 02434400
judith.blakeway@strasburger.com
JAMES MAVERICK MCNEEL
State Bar No. 24035491
james.mcneel@strasburger.com
STRASBURGER & PRICE, LLP
2301 Broadway Street
San Antonio, Texas 78215
(210) 250-6000 Telephone
(210) 240-6100 Facsimile

**ATTORNEYS FOR APPELLANTS**

## CERTIFICATE OF SERVICE

Pursuant to E-Filing Standing Order, I certify that on November 23, 2015, I electronically filed the foregoing with the Clerk of Court using the EFile.TXCourts.gov electronic filing system which will send notification of such filing to the following:

Rudy A. Garza
rugar@hfgtx.com
Charles M. Hornberger
boxy@hfgtx.com
David Jed Williams
jwilliams@hfgtx.com
Stephanie L. Curette
scurette@hfgtx.com
Hornberger Sheehan Fuller & Garza, Inc.
The Quarry Heights Building
7373 Broadway, Suite 300
San Antonio, Texas 78209
Telephone: (210) 271–1700
Facsimile: (210) 271–1730

*Attorneys for Appellee*
*Mollie Allen Childs*

Ben A. Wallis, III
Ben A. Wallis Law PC
8200 IH 10 West #101
San Antonio, Texas 78230
baw3@wallislawsa.com

*Attorneys for Appellant*
*Susan Kaye Childs Addison*

   /s/ *Judith R. Blakeway*
JUDITH R. BLAKEWAY

27

# CERTIFICATE OF COMPLIANCE

In accordance with Tex. R. App. P. 9.4(i)(1), I hereby certify that this Brief of Appellants contains no more than 5,880 words.

*/s/ Judith R. Blakeway*
JUDITH R. BLAKEWAY

# **APPENDIX**

1.    5/14/15 order granting/denying Plaintiff's motion for partial summary judgment

2.    9/18/15 order regarding motions for summary judgment

3.    Will of Bertha Allen

4.    Will of Marjorie Allen Childs

5.    Agreement Regarding Remainder Interests of Bertha Allen Life Estate

1980340.4/SPSA/34092/0102/112315

# APPENDIX 1

CAUSE NO. 2014-PC-0056

| IN THE ESTATE OF | § | IN PROBATE COURT |
| | § | |
| MARJORIE A. CHILDS, | § | NO. 2 |
| | § | |
| DECEASED. | § | BEXAR COUNTY, TEXAS |

## ORDER GRANTING/DENYING PLAINTIFF'S
## MOTION FOR PARTIAL SUMMARY JUDGMENT

On May 12, 2015, the Court heard Plaintiff's Motion for Partial Summary Judgment. After considering the Motion, Defendants' Responses to Plaintiff's Motion for Partial Summary Judgment, the summary judgment evidence, and the arguments of counsel, the Court grants the Motion in part and denies it in part. The Court grants the Motion to the extent that it finds and orders that the bequest of shares of Campbell Taggert Associated Bakeries stock in Section II of the Will of Bertha Allen was outright to her daughter, Marjorie Childs, and did not create a life estate. All other relief requested in the Motion is denied.

SIGNED this _14_ day of May 2015.

_____
JUDGE TOM RICKHOFF

FILED

MAY 1 5 2015

GERARD RICKHOFF
CLERK PROBATE COURT NO. 2
BEXAR COUNTY, TEXAS
BY: _____
DEPUTY

{00091304.2}

V0215bP7b03

159



APPENDIX 2

CAUSE NO. 2014-PC-0056

| | | |
|---|---|---|
| IN THE ESTATE OF | § | IN PROBATE COURT |
| | § | |
| MARJORIE A. CHILDS, | § | NO. 2 |
| | § | |
| DECEASED. | § | BEXAR COUNTY, TEXAS |

## ORDER REGARDING MOTIONS FOR SUMMARY JUDGMENT

On September 15, 2015, the Court considered the following motions, responses, replies, admissible evidence attached and filed, and arguments of counsel:

1. Defendant Pamela McCaskill's Motion for Partial Summary Judgment;

2. Plaintiff Mollie Childs' Response, Motion for Reconsideration and Cross Motion for Partial Summary Judgment;

3. Defendant Pamela McCaskill's Response to Plaintiff's Cross Motion for Partial Summary Judgment and No Evidence Motion for Partial Summary Judgment; and

4. Defendant Susan C. Addison's Response to Plaintiff's Motion for Reconsideration and Cross Motion for Partial Summary Judgment and No-Evidence Motion for Partial Summary Judgment

Upon reconsideration, the Court vacates the portion of its May 14, 2015 Order denying Plaintiff's Motion for Partial Summary Judgment and GRANTS Plaintiff Mollie Childs' Motion for Reconsideration and Cross Motion for Partial Summary Judgment. The Court DENIES Defendant Pamela McCaskill's Motion for Partial Summary Judgment.

{00103062.1}

V0 2 l b 5 P 2 9 2 2

1321

The Court finds that the Agreement Regarding Remainder Interests of the Bertha Allen Life Estate ("Agreement") is unenforceable and rescinded as a matter of law.

The Court further finds that:

1. This order and the Court's findings involve controlling questions of law as to which there are substantial grounds for differences of opinion; and

2. An immediate appeal from this order will materially advance the ultimate determination of the litigation because this order is dispositive of the determination of the validity and enforceability of the Agreement that forms the basis of claims in this case.

Therefore, Pursuant to Texas Rule of Civil Procedure 168, it is ORDERED that any party to this cause may file an interlocutory appeal of this order under Texas Civil Practice and Remedies Code §51.014(d). In the event that an interlocutory appeal is filed and accepted by the court of appeals, all further proceedings in this Court shall be stayed pending that appeal.

SIGNED this _____ day of September 2015.

_____
TOM RICKHOFF
JUDGE, PROBATE COURT NO. 1

FILED

SEP 23 2015

GERARD RICKHOFF
CLERK PROBATE COURT NO. 2
BEXAR COUNTY, TEXAS
BY: _____
DEPUTY

V02165P2923

1322

Submitted By:

**HORNBERGER FULLER**
**& GARZA INCORPORATED**
The Quarry Heights Building
7373 Broadway, Suite 300
San Antonio, TX 78209-3266
TEL: (210) 271-1700
FAX: (210) 271-1730

By: */s/ David Jed Williams*
    Rudy A. Garza
    Email: rugar@hfgtx.com
    State Bar No. 07738200
    Charles M. Hornberger
    Email: boxy@hfgtx.com
    State Bar No. 10002700
    David Jed Williams
    Email: jwilliams@hfgtx.com
    State Bar No. 21518060
    Stephanie L. Curette
    Email: scurette@hfgtx.com
    State Bar No. 24076780

**ATTORNEYS FOR PLAINTIFF**

V02165P2924

1323



APPENDIX 3

STATE OF TEXAS  ⅄

COUNTY OF BEXAR  ⅄  : KNOW ALL MEN BY THESE PRESENTS:

That I, Bertha Allen, of Bexar County, Texas, do make and publish and declare this instrument to be my Last Will and Testament, hereby revoking all wills by me at any time heretofore made.

## I.

I direct that all my just debts be paid.

## II.

I give all shares of stock owned by me in Campbell Taggart Associated Bakeries, Inc. at the time of my death to my daughter, Marjorie Allen Childs, with the request that she use only the income in cash dividends from said shares during her lifetime and that on her death she make provision for said shares to be divided equally among her daughters, or the issue of any deceased daughter. Should it become wise at any time to sell these shares, it is my desire that the proceeds, or any reinvestment of the proceeds, be held and disposed of by my daughter at her death in the same manner.

## III.

I give all the rest and residue of my estate to my daughter, Marjorie Allen Childs, or if she be deceased, to her children or the issue of any deceased child, per stirpes, share and share alike.

## IV.

(a) I nominate and appoint my daughter, Marjorie Allen Childs, Independent Executrix of this my Will, and in the event that she shall not be surviving or be incapable or unwilling to act at the time of my death, I then nominate and appoint her husband, Paul E. Childs, Independent Executor of this my Will. I direct that no bond shall be required of either my Executrix or Executor and that no other action shall be had in the County Court in recording of this my Will and the return of statutory inventory, appraisement and list of claims of said estate and of all claims due and owing to me at the time of my death.

(b) I authorize and empower my Executrix or Executor, as the case may be, to sell, dispose of, deliver and convey any portion of my estate, real or personal, not specifically devised, at public or private sale for any price on any terms, and in any manner that may seem to them best, for the purpose of paying any of my debts or for any purpose that they may deem proper. In addition, my Executrix or Executor shall have all powers give to trustees generally under the laws of the State of Texas.

EXHIBIT

2

81021444

V02154P0405

65

This I make and publish as my Last Will, hereunto signing and subscribing my name this the 16th day of October, 1980, in the presence of Sidney A. Sparks and Ruth G. Sparks who attest the same at my request.

<u>Bertha Allen</u>
BERTHA ALLEN

The above instrument was now here published as her Last Will, and signed and subscribed by Bertha Allen, the testatrix, in our presence, and we, at her request, in her presence and in the presence of each other, sign and subscribe our names thereto as attesting witnesses.

<u>Sidney A. Sparks</u>
SIDNEY A. SPARKS                    Witness

<u>Ruth G. Sparks</u>
RUTH G. SPARKS                      Witness

STATE OF TEXAS    }
COUNTY OF BEXAR   }

Before me, the undersigned authority, on this day personally appeared Bertha Allen, Sidney A. Sparks and Ruth G. Sparks known to me to be testatrix and the witnesses, respectively, whose names are subscribed to the annexed or foregoing instrument in their respective capacities; and all of said persons being by me duly sworn, the said Bertha Allen, testatrix, declared to me and to the said witnesses in my presence that said instrument is her Last Will and Testamen and that she had willingly made and executed it as her free act and deed for the purposes therein expressed; and the said witnesses, each on their oath stated to me, in the presence and hearing of the said testatrix, that the said testacrix had declared to them that said instrument is her Last Will and Testament, and that she executed the same as such and wanted each of them to sign it as a witness; and upon their oaths each witness stated further that they did sign the same as witnesses in the presence of said testatrix and at her request; that she was at the time nineteen years of age or over and was of sound mind; and that each of said witnesses was then at least fourteen years of age.

<u>Bertha Allen</u>
Testatrix

81021445

-2-

_____
SIDNEY A. SPARKS    Witness


_____
RUTH G. SPARKS    Witness


Subscribed and acknowledged before me by the said Bertha Allen, testatrix, and subscribed and sworn to before me by the said __Sidney A. Sparks__ and __Ruth G. Sparks__, witnesses, this __16th__ day of October, 1980.

_____
Notary Public, Bexar County, Texas
SAVANNAH C. STORTI
NOTARY PUBLIC IN AND FOR
BEXAR COUNTY, TEXAS
My commission expires March 31, 1981

81021446



APPENDIX 4

**JAMES R. BECK**
ATTORNEY AT LAW
14614 FALLING CREEK DRIVE, SUITE 132
HOUSTON, TEXAS 77068



FILED

JAN 09 2014

GERARD RICKHOFF
CLERK PROBATE COURT NO. 1
BEXAR COUNTY, TEXAS
BY: _____
DEPUTY

# LAST WILL AND TESTAMENT

## OF

## MARJORIE A. CHILDS

THE STATE OF TEXAS    *

                                  KNOW ALL MEN BY THESE PRESENTS:

COUNTY OF BEXAR    *

That I, MARJORIE A. CHILDS, a resident of Bexar County, Texas, make and publish this my LAST WILL AND TESTAMENT, and I revoke all Wills and other testamentary instruments previously made by me.

## ARTICLE I.

### Identification

1.01    I am a single woman.

1.02    I have three (3) children who are living: PAMELA ANN CHILDS MCCASKILL, SUSAN KAYE CHILDS ADDISON, and MOLLIE ALLEN CHILDS. All references in this Will to "my children" (or to other similar phrases) are only to them. All references in this Will to "my descendants" (or to other similar phrases) are to my children identified above and their legitimate descendants, including descendants by adoption.

## ARTICLE II.

### Tangible Personal Property

2.01    I give and bequeath the following property to my daughter PAMELA ANN CHILDS MCCASKILL:

     (a)    my diamond watch;

     (b)    my diamond channel-set wedding band;

     (c)    four place settings of my Francis I silverware;

     (d)    two large Waterford goblets;

V02124P9699   6



(Initials)

(e)   my four piece silverplate large coffee urn, creamer, sugar and oblong tray;

(f)   four silver goblets; and

(g)   all of my Blue Danube china.

2.02   I give and bequeath the following property to my daughter SUSAN KAYE CHILDS ADDISON:

(a)   my 25th anniversary white gold and diamond dinner ring;

(b)   four silver goblets;

(c)   two large Waterford goblets;

(d)   four place settings of my Francis I silverware;

(d)   my Community Plate silverware (six dinner settings with serving pieces); and

(e)   my Georgian five piece silverplate coffee service with oval tray.

2.03   I give and bequeath the following property to my daughter MOLLIE ALLEN CHILDS:

(a)   four silver goblets;

(b)   four place settings of my Francis I silverware;

(c)   two large and two small Waterford goblets;

(d)   my pewter coffee service with coffeepot, creamer and sugar and tray;

(e)   my antique creamer and sugar;

(f)   my diamond and platinum engagement ring;

(g)   my azalea pattern china; and

(h)   my Waterford bowls, biscuit barrels, and candle sticks.

2.04   I give my silver water pitcher to my daughters who survive me, such water pitcher to be owned and its use shared by them equally.

2.05   I give and bequeath to my daughters who survive me all of my jewelry, crystal, dishes, furniture, silverplate, art, trinkets, and other tangible personal property of a similar nature that is not hereinabove specifically given and bequeathed to a named daughter of mine. If a daughter of mine does not survive me, the gift to her under section 2.01, 2.02 or 2.03 of this Article II of my Will shall lapse and the property she would otherwise have received shall be added to and included in the gift made to my surviving daughters under this Section 2.05 of my Will.

V02124P9700

(Initials)

## ARTICLE III.

### Remainder Interest under Bertha Allen's Will

Pursuant to the requirements of the life estate created for my benefit under Section II of the Will of Bertha Allen, the Anheuser Busch stock, which is derived from the Campbell Taggart Associated, Inc., stock addressed in the aforementioned Section II of Bertha Allen's Will, shall be distributed to my daughters and their descendants, per stirpes. Furthermore, and also pursuant to the requirement of the life estate created for my benefit under Section II of Bertha Allen's Will, if at the time of my death I no longer own the Anheuser Busch stock, then the proceeds or reinvestment of the proceeds shall be disctributed to my daughters and their descendants, per stirpes.

## ARTICLE IV.

### Residue of Estate

4.01    I give, devise and bequeath all of the rest, residue and remainder of my estate, real, personal and mixed, wheresoever situated, (including any lapsed gifts) to the Trustee of the trust established by that certain Trust Agreement executed May 7, 1993 by myself as Trustor and by MOLLIE ALLEN CHILDS as Trustee known as the MARJORIE ALLEN CHILDS TRUST, to be administered and disposed of as part of the aforesaid trust.

4.02    If for any reason the foregoing devise and bequest lapses or fails, then I give, devise, and bequeath all of the residue of my estate, real, personal, and mixed, separate and community, wheresoever situated, to my descendants per stirpes; or if no descendant of mine survives me, to my heirs-at-law.

## ARTICLE V.

### Fiduciary Appointments

5.01    I appoint MOLLIE ALLEN CHILDS to be Independent Executrix of my Will and estate. If MOLLIE ALLEN CHILDS does not qualify or, if having qualified, dies, resigns, becomes incapacitated or otherwise ceases to act, I appoint PAMELA ANN CHILDS MCCASKILL to be Independent Executrix of my Will and estate. If PAMELA ANN CHILDS MCCASKILL does not qualify or, if having qualified, dies, resigns, becomes incapacitated or otherwise ceases to act, I appoint SUSAN KAYE CHILDS ADDISON to be Independent Executrix of my Will and estate. Unless another meaning is clearly indicated or required by context or circumstances, the term "Executor" shall also mean and include any alternates or successors, and my references to Executor shall always mean Independent Executor.

V02124P9701



(Initials)

5.02    I grant to my Executor the continuing, absolute, discretionary power to deal with any property, real or personal, held in my estate as freely as I might in the handling of my own affairs and I grant to my Executor all powers conferred on trustees by the Texas Trust Code, and by any future amendments to the Texas Trust Code or any corresponding statute, except for any instance in which the Texas Trust Code or such other statutory provisions may conflict with the express provisions of this Will, in which instance the provisions of this Will shall control. Such powers shall be exercised independently and without prior approval of any court or judicial authority. My Executor shall be saved harmless from any liability for any action, if done in good faith and without gross negligence, and any person dealing with my Executor shall not be required to inquire into the propriety of any of the Executor's actions.

5.04    No Executor serving hereunder shall receive compensation for services rendered by such Executor. Every Executor shall be reimbursed for the reasonable costs and expenses incurred in connection with such Executor's duties.

5.05    My Executor may sell, exchange, partition, or otherwise dispose of any property, real or personal, at public or private sale, for such purposes and upon such terms including options and sale on credit, with or without security, as my Executor deems best.

5.06    My Executor may, whenever required or permitted, divide or distribute any property, and make such division or distribution in kind or in money, or in part kind and in part money, and without regard to the income tax basis of any such property.

5.07    My Executor, in buying and selling assets, in lending and borrowing money, and in all other transactions, irrespective of the occupancy by the same person of dual positions, may deal with himself or herself in his or her separate, or any fiduciary capacity. This provision shall not apply to the extent that self-dealing may not be waived by law.

## ARTICLE VI.

### Miscellaneous Provisions

6.01    I direct that all my legal debts, the expenses of my last illness and funeral, and the expenses of administering my estate shall be charged against my residuary estate and may be paid in the order and out of those assets of my residuary estate (including the income of my residuary estate) that my Executor deems best. My Executor is specifically given the right to renew, refinance and extend, in any form that my Executor deems best, any secured or unsecured debt or charge existing at the time of my death. Under no circumstances shall my Executor be required to prepay any debt of mine.

VO2124P9702

9

6.02    For all purposes of this Will, if any beneficiary dies within thirty (30) days after my death, such beneficiary shall be considered not to have survived me.

6.03    In the event any person shall directly or indirectly attempt to oppose or set aside the probate of this Will or to impair or invalidate any part of my Will, the share designated for said person shall be forfeited; said person shall receive no interest whatsoever in my estate; and any forfeited share shall be distributed as if the beneficiary was deceased.

6.04    Where context and circumstances require, the gender of all words used in this Will shall include the masculine, feminine and neuter, and the singular of all words shall include the plural and the singular.

6.05    If any provisions of this Will or of any Codicil hereto is held to be inoperative, invalid, or illegal, it is my intention that all of the remaining provisions thereof shall continue to be fully operative and effective so far as is possible and reasonable.

6.06    The headings above the various provisions of this Will have been included only in order to make it easier to locate the subject covered by each provision and are not to be used in construing this Will or in ascertaining my intentions.


IN TESTIMONY WHEREOF, I have placed my initials on each of the foregoing pages of this, my LAST WILL AND TESTAMENT, and in the presence of two witnesses, who are acting as witnesses at my request, in my presence and in the presence of each other, I hereunto sign my name on this the _20ᵗʰ_ day of _November_____, 2008.


_Marjorie A. Childs_____
MARJORIE A. CHILDS, Testatrix

V02124P9703

10

The foregoing instrument was signed by the Testatrix, MARJORIE A. CHILDS, in our presence and declared by her to be her LAST WILL AND TESTAMENT, and we the undersigned witnesses, sign our names hereunto as witnesses at the request and in the presence of the said Testatrix, and in the presence of each other, on this the 20th day of November , 2008.

_Octavia Passmore_
Witness

_162 Sterling Ave._
_San Antonio, TX 78220_
Address

_Frances M. Perkins_
Witness

_8012 Chimney Trail_
_San Antonio, Texas_
Address

V02124P9704

_E STATE OF TEXAS        *

COUNTY OF BEXAR        *

      BEFORE ME, the undersigned authority, on this day personally appeared MARJORIE A. CHILDS, **Octavia Passmore** and **Frances M. Perkins**, known to me to be the Testatrix and the Witnesses, respectively, whose names are subscribed to the annexed or foregoing instrument in their respective capacities, and, all of said persons being by me duly sworn, MARJORIE A. CHILDS, Testatrix, declared to me and to the said Witnesses in my presence that said instrument is her LAST WILL AND TESTAMENT, and that she had willingly made and executed it as her free act and deed for the purposes therein expressed; and the said Witnesses, each on his or her oath stated to me, in the presence and hearing of the said Testatrix, that the said Testatrix had declared to them that said instrument is her LAST WILL AND TESTAMENT, and that she executed the same and wanted each of them to sign it as a Witness; and upon their oaths each Witness stated further that they did sign the same as witnesses in the presence of the said Testatrix and at her request; that she was at that time 18 years of age or over and was of sound mind; and that each of said Witnesses was then at least 14 years of age.

 

                        *Marjorie A. Childs*
                        MARJORIE A. CHILDS, Testatrix

                        *Octavia Passmore*
                        Witness

                        *Frances M. Perkins*
                        Witness

      SUBSCRIBED AND SWORN TO before me by the said MARJORIE A. CHILDS, Testatrix, by the said **Octavia Passmore** and **Frances M. Perkins**, witnesses, this the **20th** day of **November**, 2008.

                        *Frances C. Hernandez*
                        Notary Public, State of Texas



FRANCES C. HERNANDEZ
Notary Public, State of Texas
My Commission Expires
MAY 27, 2012



APPENDIX 5

## Agreement Regarding Remainder Interests

### Of Bertha Allen Life Estate

Pamela Ann Childs McCaskill (Pam), Susan Kaye Childs Addison (Susan), and Mollie Allan Childs (Mollie) are the three daughters and only children of Marjorie A. Childs. For value received and hereby acknowledged Pam, Susan and Mollie hereby agree as follows:

The entire assets subject to the life estate created by the will of Bertha Allen and referenced in the will of Marjorie A. Childs signed November 20, 2008, are contained within 2 brokerage accounts styled "Mollie Childs POA U/W Bertha Allen DTD 11/5/2008 FBO Marjorie Childs Life Tenant". One brokerage account is held under account ___925 at Federated Securities, the other under account ___14 at Raymond James & Associates. In the event Pam, Susan and Mollie are living at the time of death of Marjorie A. Childs, the accounts are to be divided and distributed as follows:

The Federated Securities account to be split equally and distributed between Pam and Susan; the Raymond James account to be distributed in its entirety to Mollie.

In the event one or two of the distributees predeceases Marjorie A. Childs, that portion of the assets subject to the life estate that would have been distributed to the heir/heirs shall be distributed in equal parts to the surviving heir/heirs named under the wills of Bertha Allen and Marjorie A. Childs.

Each signer may sign a separate copy of this agreement and the three copies with their original signatures shall taken together constitute one instrument.

_Pam Mc Caskill_
Pam McCaskill
4323 Allencrest, Dallas, Texas

Date 6/14/12

_Susan E. Addison_
Susan Addison
18024 Clermont Cir, Seneca SC

Date 5/20/2012

_Mollie Childs_
Mollie Childs
7700 Broadway, #104 San Antonio, Texas

Date 3/29/2012

PM0001



EXHIBIT
3